HARTFORD ACCIDENT & INDEMNITY
COMPANY, Appellant,

v.

Theodore BUCKLAND, Individually and
as Next Friend of Theodore Eric Buck-
land and Brittany Buckland, Minors,
Appellees.

No. 05–93–00631–CV.

Court of Appeals of Texas,
Dallas.

June 30, 1994.

Linda Jenkins, Dallas, for appellant.

David R. Weiner, David G. Kern, Marc Fanning, Richard T. Cheatham, Dallas, for appellees.

Before THOMAS, OVARD and ROSENBERG, JJ.

## OPINION

ROSENBERG, Justice.

This case arises out of a third-party claim under the Texas Workers' Compensation Act.[1] Hartford Accident and Indemnity Company (Hartford) appeals the trial court's judgment in favor of Theodore Buckland, Theodore Eric Buckland, and Brittany Buckland (collectively Buckland). In two points of error, Hartford contends that the trial court erred in ruling as a matter of law that Hartford is not entitled to a credit for future benefit payments against Buckland's recovery from third parties and that the trial court erred in awarding Buckland's attorney one-third of Hartford's subrogation recovery as attorney's fees. We affirm the trial court's judgment.

### FACTUAL BACKGROUND

Hartford issued a workers' compensation insurance policy to Fish Engineering and Construction, Inc. (Fish) under which it agreed to pay benefits in accordance with the Texas Workers' Compensation Act to certain Fish employees who suffered covered injuries during the course and scope of their employment. In its policy of insurance, Hartford agreed to waive certain rights to recover payments under the policy from third parties. The policy provides:

> We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.

> This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

> The premium for this endorsement is shown in the Schedule.

> SCHEDULE

> 1. ( ) Specific Waiver

> Name of person or organization

> 2. (X) Blanket Waiver

> Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.

In 1987, Fish contracted with Phillips Petroleum Company (Phillips Petroleum) to provide construction services at Phillips Petroleum's facilities. The contract provided that Phillips Petroleum was entitled to the waiver of Hartford's subrogation rights. During the construction contract, one of Fish's employees, Buckland, suffered severe injuries when he fell from scaffolding designed, manufactured, and marketed by Figgie International, Inc. (Figgie). Hartford be-

---

1. This case is governed by former article 8307, section 6a of the Texas Revised Civil Statutes since Buckland's injuries occurred prior to January 1, 1991. *See* Act of May 15, 1973, 63rd Leg., R.S., ch. 88, § 10, 1973 Tex.Gen.Laws 193, *repealed by* Act of Dec. 13, 1989, 71st Leg., 2nd C.S., ch. 1, § 16.01(1), 1989 Tex.Gen.Laws 114 (current version at Tex.Lab.Code Ann. §§ 417.001–.003 (Vernon Pamph. 1994)). All references will be to former article 8307, section 6a unless otherwise noted.

gan paying workers' compensation benefits to Buckland under the policy.

While continuing to receive workers' compensation benefits, Buckland, individually and as next friend of his two minor children, filed suit in August 1989 against Phillips Petroleum and Figgie asserting theories of negligence and strict liability.[2] Hartford intervened in the suit. Buckland later joined Phillips 66 Company (Phillips 66) as an additional defendant. Buckland ultimately settled his case with Phillips Petroleum and Phillips 66 for approximately $3.2 million (Phillips settlement). Buckland settled his case with Figgie for $75,000 (Figgie settlement).

## PROCEDURAL BACKGROUND

In December 1991, the trial court entered a summary judgment that Hartford recover nothing by way of its subrogation action filed against Phillips 66 on the ground that Hartford's contractual waiver of subrogation extended to Phillips 66. Additionally, in January 1992, the trial court rendered a summary judgment that Hartford was not entitled to attorney's fees on any portion of the Phillips settlement recovery. On January 30, 1992, the trial court entered an agreed judgment with respect to the settlement of all claims against the defendants.

In April 1992, Hartford filed an amended plea in intervention. Hartford sought declaratory relief concerning its entitlement to a credit against Buckland's recovery of the Phillips settlement, its entitlement to the $75,000 Figgie settlement, apportionment of attorney's fees, and equitable subrogation. Thereafter, Buckland, Hartford, and Figgie settled all matters in controversy between them, and the trial court entered a take-nothing judgment on Buckland's and Hartford's claims against Figgie.

Hartford then filed a motion for summary judgment seeking a declaration that, notwithstanding its contractual waiver of subrogation, Hartford was entitled to a credit against future benefits from the excess of Buckland's $3.2 million settlement recovery from Phillips 66 over the amounts previously paid to Buck-

land by Hartford. Hartford also sought a declaration that it was entitled to subrogation recovery of the entire $75,000 Figgie settlement on the grounds that no waiver existed in favor of Figgie.

Buckland filed a cross-motion for summary judgment and a motion for attorney's fees out of the $75,000 Figgie settlement. On May 22, 1992, the trial court denied Hartford's motion for summary judgment seeking declaratory relief. The trial court did not dispose of Buckland's cross-motion for summary judgment or Buckland's motion for attorney's fees.

On June 19, 1992, Hartford filed a motion for new trial, requesting the trial court to reconsider its May 22, 1992 order denying Hartford's motion for summary judgment. The record reflects that the trial court did not rule on Hartford's motion for new trial until March 1, 1993.

Hartford perfected this appeal on March 30, 1993, complaining of the trial court's May 22, 1992 order denying its motion for summary judgment, and filed an abridged transcript on April 19 containing the May 22, 1992 order. We informed the parties on May 10, 1993, that the transcript did not contain a final judgment because the denial of Hartford's motion for summary judgment was not a disposition on the merits. We instructed the parties to file a supplemental transcript containing an order disposing of all the claims.

Thereafter, the parties filed a supplemental transcript containing various other judgments, including a January 30, 1992 agreed judgment, a take-nothing judgment on Buckland's and Hartford's claims against Figgie, and a "final judgment" entered on May 26, 1993, signed ostensibly in response to this Court's May 10, 1993 instructions. The May 26, 1993 judgment ordered that (1) Hartford was not entitled to subrogation from Phillips 66 because Hartford waived its subrogation rights against both Phillips Petroleum and Phillips 66, (2) Hartford was not entitled to a credit because its waiver of subrogation also waived its right to future credits, (3) Hartford was not entitled to attorney's fees from

---

2. Buckland also brought suit against Fish who was subsequently discharged from the case.

any recovery from Phillips Petroleum and Phillips 66 because of its waiver of subrogation and because there was no recovery by Hartford, (4) Hartford was not entitled to attorney's fees out of the $75,000 Figgie settlement, (5) Buckland's attorney was awarded 33⅓ percent of the Figgie settlement as attorney's fees, and (6) Hartford was not entitled to recover any portion of the $944,686.99 paid to Buckland in benefits under the workers' compensation insurance policy with Buckland's employer. The trial court denied all of Hartford's claims not expressly disposed of otherwise.

Before we can reach the parties' arguments in this appeal, we must determine the procedural effect of the trial court's various judgments.

The January 30, 1992 judgment reflects that the trial court called the case to trial. It shows that the parties waived a jury and agreed to submit all matters in dispute among them to the trial court. This language suggests that the case was set for a conventional trial on the merits. The judgment incorporates the Phillips settlement and releases all defendants from any further liability. It does not show that the trial court reserved any issues for later disposition or that a separate trial was ordered as to any claim. Because the judgment appears to have been rendered and entered in a case regularly set for a conventional trial on the merits, because there is no order for separate trials, and because the judgment does not reserve any claims for later disposition, the January 30, 1992 judgment constitutes a final judgment. *See North East Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex.1966). That judgment was not appealed and is not before us.

It is apparent, however, that neither the parties nor the trial court construed the January 30, 1992 judgment as a final judgment. After entry of the judgment, on April 13, 1992, Hartford filed its amended plea in intervention. Under the circumstances present in this case, Hartford's amended plea in intervention constitutes a pleading initiating

a second, distinct suit. *See Leach v. Brown*, 156 Tex. 66, 292 S.W.2d 329, 331 (1956); *Cockrell v. Central Sav. & Loan Ass'n*, 788 S.W.2d 221, 224 (Tex.App.—Dallas 1990, no writ). On September 3, 1992, the trial court rendered an interlocutory take-nothing judgment regarding the claims against Figgie. The trial court's May 26, 1993 judgment disposed of all claims and parties present in the second suit.[3] However, it is silent on the procedural method the trial court used to dispose of Hartford's claims. It is this judgment that is currently before us on appeal.

## NATURE OF THE TRIAL COURT'S JUDGMENT

Initially, we must determine by what procedural method the trial court rendered judgment. Did the trial court render a final judgment against Hartford after a conventional trial on the merits, or did it render a summary judgment? Buckland raises several procedural arguments in response to Hartford's first point of error on the credit issue, all of which are based upon a presumption that a conventional trial on the merits occurred. In response to Hartford's second point of error concerning attorney's fees, Buckland asserts that the proceeding was a summary judgment. After a review of the record before us, we cannot agree with either of Buckland's contentions.

After initiating the second suit by filing its amended plea in intervention, Hartford filed its motion for summary judgment seeking declaratory relief on the issue of its entitlement to a credit against future compensation benefits and its subrogation right to the entire Figgie settlement. Buckland filed a cross-motion for summary judgment on the credit issue contending that Hartford's waiver of subrogation also waived its entitlement to future credits. Additionally, Buckland filed a motion for attorney's fees out of the Figgie settlement. The record reflects only an order denying Hartford's motion for summary judgment. However, the trial court's May 26, 1993 judgment expressly orders that Hartford is not entitled to a credit because

---

**3.** The trial court's judgment also disposes of Hartford's claims raised in the first suit, although those claims were not before the trial court in the second suit. However, the parties do not complain about these portions of the trial court's judgment.

its waiver of subrogation also waived its right to future credits. Because the judgment grants the relief requested in Buckland's cross-motion for summary judgment, we construe the judgment as granting Buckland's cross-motion for summary judgment. Therefore, the record shows that the trial court disposed of the credit issue as a summary judgment.

However, the record affirmatively shows that the trial court did not dispose of Buckland's motion for attorney's fees at the summary judgment hearing. The docket entry sheet reveals that the trial court requested the parties to file affidavits so that it could determine the apportionment of attorney's fees, if any. The issue was then submitted to the trial court on affidavits filed by the parties. In the trial court's final judgment, it awarded Buckland's attorney one-third of the Figgie settlement as attorney's fees and denied Hartford and its attorney any apportionment of attorney's fees. The record shows that the trial court determined this issue with the parties' consent on the basis of affidavits and, accordingly, entered its final judgment *apportioning attorney's fees.*

We conclude that the record as a whole demonstrates that a summary judgment was entered as to Hartford's claim for future credits, rather than a judgment following a conventional trial on the merits. Therefore, we will review the credit issue under the standard of review for summary judgments. Because the trial court did not resolve the issue of attorney's fees as a summary judgment, we apply an abuse of discretion standard in reviewing the trial court's apportionment of attorney's fees. *See City of Austin v. Janowski,* 825 S.W.2d 786, 788 (Tex. App.—Austin 1992, no writ).

## CREDIT FOR FUTURE BENEFIT PAYMENTS

In its first point of error, Hartford contends that the trial court erred as a matter of law in ruling that Hartford is not entitled to a credit for future benefit payments out of Buckland's $3.2 million recovery from Phil-

lips 66. In support of its contention, Hartford relies upon article 8307, section 6a of the workers' compensation act and the contractual waiver contained in the workers' compensation insurance policy it issued to Buckland's employer.

Section 6a provides in relevant part:

(c) If at the conclusion of a third party action a workmen's compensation beneficiary is entitled to compensation, the net amount recovered by such beneficiary from the third party action shall be applied to reimburse the association for past benefits and medical expenses paid and any amount in excess of past benefits and medical expenses shall be treated as an advance against future benefit payments of compensation to which the beneficiary is entitled to receive under the Act. When the advance is adequate to cover all future benefit payments of compensation and medical benefit payments as provided by this law, no further payments shall be made by the association but if insufficient, the association shall resume such payments when the advance is exhausted.

Act of May 15, 1973, 63rd Leg., R.S., ch. 88, § 10, 1973 Tex.Gen.Laws 193 (repealed).

Hartford argues that section 6a confers two separate rights. Hartford asserts that section 6a creates a statutory right of subrogation distinct from the right to a future credit. Hartford maintains that its contractual waiver of its right to recover payments from third parties does not preclude it from claiming a credit for future compensation against the excess of the $3.2 million Phillips settlement over the amounts Hartford previously paid to Buckland.

Buckland does not address the merits of Hartford's argument in his brief.[4] However, in Buckland's cross-motion for summary judgment, Buckland argued that the credit on future benefits sought by Hartford arose from the same subrogation rights as the reimbursement for past amounts paid. Buckland maintained that the insurance contract waived not only Hartford's right to

4. Buckland raises only procedural arguments which we disposed of at the beginning of this opinion.

recover past payments, but also its right to a credit for future payments.

A trial court may render summary judgment only if the pleadings, depositions, admissions, and affidavits show that no genuine issue exists regarding any material fact and that the movant is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990). Under rule 166a, both plaintiff and defendant may simultaneously move for summary judgment. Tex.R.Civ.P. 166a. Each party must carry its own burden, and neither can prevail due to the other's failure to discharge its burden. *See Cove Inv., Inc. v. Manges*, 602 S.W.2d 512, 514 (Tex.1980). On appeal, we consider all evidence accompanying both motions in determining whether to grant either party's motion. *Dallas County Appraisal Dist. v. Institute for Aerobics Research*, 766 S.W.2d 318, 319 (Tex.App.—Dallas 1989, writ denied).

In reviewing the summary judgment evidence, we apply the following standards:

1. The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant is taken as true; and

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

In article 8307, section 6a, the legislature created two benefits for a workers' compensation carrier when a claimant receives a settlement or judgment in a third-party action. One, the net amount recovered must first be applied to reimburse the carrier for past benefits and medical expenses it has paid. *Ischy v. Twin City Fire Ins. Co.*, 718 S.W.2d 885, 886 (Tex.App.—Austin 1986, writ ref'd n.r.e.). Two, any amount in excess of those benefits shall be treated as an advance against future benefits. *Id.* The advance precludes the worker from recovering fur-ther payments from the carrier until the third-party settlement has been exhausted.

The policy provides that Hartford waives its right to recover payments from third parties liable for any injury covered by the policy. Both parties agree that this provision waives Hartford's statutory subrogation rights. The issue presented is whether this waiver of Hartford's subrogation rights also waives its right to an advance against future benefits. To resolve this issue, we must determine the nature of Hartford's subrogation interest.

Under article 8307, section 6a, a carrier's subrogation interest includes its right to reimbursement as well as its right to future amounts for which it is relieved of liability. *See Chambers v. Texas Employers Ins. Ass'n*, 693 S.W.2d 648, 650 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *City of Austin*, 825 S.W.2d at 791. Future benefits are a part of the carrier's subrogation interest because they act as an advance against future payments. *Ischy*, 718 S.W.2d at 888. We conclude that Hartford's waiver of its subrogation rights waives its right to reimbursement and its right to future credits. Accordingly, the trial court did not err in denying Hartford's motion for summary judgment and granting Buckland's cross-motion for summary judgment. We overrule Hartford's first point of error.

### ATTORNEY'S FEES

In Hartford's second point of error, it contends that the trial court erred in awarding Buckland's attorney $25,000, or one-third of Hartford's subrogation recovery from Figgie. Hartford's complaint is that the trial court erred in awarding Buckland's attorney the full one-third allowable under article 8307, section 6a without apportioning a share to its attorney.

Buckland contends that we do not have jurisdiction to consider Hartford's claim. Buckland argues that the right to attorney's fees under article 8307, section 6a runs in favor of, and belongs personally to, the attorney. Because Hartford's attorney has not perfected her own appeal, Buckland main-

tains that we have no jurisdiction to consider the issue of attorney's fees.

When a claimant's attorney is allowed attorney's fees for recovering the carrier's subrogation interest, such fees are paid by the carrier out of the carrier's subrogation recovery. Act of May 15, 1973, 63rd Leg., R.S., ch. 88, § 10, 1973 Tex.Gen.Laws 193 (repealed). The result is a decrease in the carrier's net recovery. The carrier, therefore, has an interest in, and a right to contest, the amount of attorney's fees awarded to a claimant's attorney.

First, Hartford argues that the trial court abused its discretion in applying an incorrect legal standard in making its decision. However, because Hartford fails to point to any evidence in the record to support its contention, Hartford has waived this argument on appeal. Tex.R.App.P. 74(f).

Hartford then argues that there is no evidence or insufficient evidence to support the trial court's decision. When reviewing an award of attorney's fees under article 8307, section 6a, we do not conduct a sufficiency of the evidence review. *See Twin City Fire Ins. Co. v. Jones*, 834 S.W.2d 114, 116 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *City of Austin*, 825 S.W.2d at 788. We review the trial court's apportionment of attorney's fees under an abuse of discretion standard. *Twin City*, 834 S.W.2d at 116; *City of Austin*, 825 S.W.2d at 788. We, therefore, overrule Hartford's second point of error to the extent that it asserts that the evidence is legally and factually insufficient to support the trial court's apportionment of attorney's fees.

Finally, Hartford asserts that the trial court's ruling implicitly concluded that Hartford's attorney did not actively participate in the case and that in reaching such a conclusion, the trial court abused its discretion. After the trial court signed its final judgment, Hartford did not request, and the trial court did not file, any findings of fact and conclusions of law. Where no findings of fact or conclusions of law are filed or requested, we will imply all necessary findings to support the trial court's judgment. *Burnett v. Motyka*, 610 S.W.2d 735, 736 (Tex.

1980). We will affirm the trial court's judgment if it can be upheld on any legal theory that finds support in the evidence. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978).

The allowance of attorney's fees rests in the sound discretion of the trial court and its judgment will not be reversed without a clear showing that the trial court abused its discretion. *City of Austin*, 825 S.W.2d at 788. A trial court abuses its discretion only if the court acts without reference to any guiding rules and principles. *Id.* (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986)). We review the evidence in the light most favorable to the trial court's decision. *Id.* If there is some evidence supporting the trial court's decision, its decision is justified. *Id.*

Article 8307, section 6a governs the award of attorney's fees out of an insurance carrier's subrogation recovery from a third party:

(a) [W]hen the claimant is represented by an attorney, and the association's interest is not actively represented by an attorney, the association shall pay such fee to the claimant's attorney not to exceed one-third (⅓) of said subrogation recovery or as may have been agreed upon between the claimant's attorney and the association or in the absence of such agreement the court shall allow a reasonable attorney's fee to the claimant's attorney for recovery of the association's interest which in no case shall exceed thirty-three and one-third per cent (33⅓%) payable out of the association's part of the recovery.

. . . .

(b) If the association obtains an attorney to actively represent its interest and if the attorney actively participates in obtaining a recovery, the court shall award and apportion an attorney's fee allowable out of the association's subrogation recovery between such attorneys taking into account the benefit accruing to the association as a result of each attorney's service, the aggregate of such fees not to exceed thirty-three and one-third per cent (33⅓%) of the subrogated interest.

Act of May 15, 1973, 63rd Leg., R.S., ch. 88, § 10, 1973 Tex.Gen.Laws 193 (repealed).

■ The statute provides for three instances in which an attorney may recover fees based upon a subrogation recovery: (1) where the carrier hires an attorney to represent it but the attorney does not actively represent it; (2) where the claimant's attorney represents both the claimant and the carrier; and (3) where the carrier has an attorney who actively represents it and participates in obtaining a recovery. *Twin City,* 834 S.W.2d at 117. An attorney "actively represents" and "actively participates in obtaining a recovery" when the attorney takes steps, adequate when measured by the difficulty of the case, toward prosecuting the claim. *Hartford Ins. Co. v. Branton & Mendelsohn, Inc.,* 670 S.W.2d 699, 702 (Tex. App.—San Antonio 1984, no writ).

■ The attorneys' affidavits reveal that Hartford filed only four documents in this case: its plea in intervention, its amended plea in intervention, its motion for summary judgment, and its motion for reconsideration and motion for summary judgment seeking declaratory relief. Hartford's attorney reviewed the compensation file and provided a summary of the medical bills in the case. Hartford did not generate or send any written discovery or take any depositions in the case. Although Hartford's attorney was informed of the depositions taken in this case, out of twenty oral depositions, Hartford's attorney appeared at only one. Out of the numerous hearings held in the case, Hartford's attorney either did not appear or, when she did appear, she did not participate in the hearings. Hartford sent only ten letters in the case, seven of which were transmittal letters and one that was a change of address. Only the remaining two letters contained any matters of substance. Hartford did not assist in hiring experts. It did not share in any of the expenses or respond to Buckland's request for it to share in the expenses of the case.

Additionally, the trial court could consider the entire file and all pretrial proceedings. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 38.004 (Vernon 1986). Once the trial court considered the affidavits and the entire file, it could

have reached the conclusion that Hartford's attorney did not actively represent its interests or that Hartford's attorney did not actively participate in obtaining the recovery. *See Twin City,* 834 S.W.2d at 119. The determination of the merits of each attorney's actions in the case is left to the trial court's discretion. Section 6a imposes a one-third recovery limit on the amount of attorney's fees owed by the insurer and leaves to the trial court's discretion the determination of the amount up to that limit. We cannot say that the trial court exceeded or abused its discretion in awarding Buckland's attorney the entire one-third attorney's fees. *Cf. Lindamood v. Link–Belt Corp.,* 517 F.Supp. 426, 427–28 (N.D.Tex.1981); *Hartford Ins. Co.,* 670 S.W.2d at 701–03; *International Ins. Co. v. Burnett & Ahders, Associated,* 601 S.W.2d 199, 201–02 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.). We overrule Hartford's second point of error.

We affirm the trial court's judgment.