**HOUSTON GENERAL INSURANCE COMPANY, Appellant,**

v.

**Teresa Ann CAMPBELL, Appellee.**

**No. 13–96–141–CV.**

Court of Appeals of Texas, Corpus Christi.

Jan. 29, 1998.

Rehearing Overruled March 19, 1998.

---

17. *See* Tex.R. Civ. Evid. 103(a)(2), (b).

Pamela McGraw, Wren Gray Foster, Law Office of Tony Korioth, Austin, for Appellant.

William J. Tinning, Portland, David T. Garcia, Falfurrias, for Appellee.

Before SEERDEN, C.J., and FEDERICO G. HINOJOSA, Jr. and YANEZ, JJ.

## OPINION

YANEZ, Justice.

This is an appeal from a summary judgment in favor of a workers' compensation beneficiary in a suit by a workers' compensation carrier to enforce an alleged subrogation lien. Houston General Insurance Company ("Houston General"), appellant, seeks to set aside a judgment rendered in favor of Teresa Ann Campbell, appellee, which held that Houston General had no subrogation interest in her settlement with third parties stemming from a work-related injury. Houston General also contends the trial court abused its discretion in awarding Campbell's attorney a percentage of the settlement award. We reverse and render in part and affirm in part.

The parties stipulated to the underlying facts. Campbell was injured while working at Reproductive Systems on February 13, 1988. She sought medical treatment from Dr. John D. Halcomb at a hospital owned and operated by Spohn Health System Corporation ("Spohn Hospital"). Houston General, which was the workers' compensation insurance provider for Campbell's employer, Reproductive Services, paid for her treatment.

During the course of her treatment, Campbell suffered further injury from purported medical malpractice alleged to have occurred on January 12, 1992, January 20, 1992, and April 15, 1992. She sued Dr. Halcomb and Spohn Hospital, alleging medical malpractice and seeking recovery for damages for personal injuries resulting from medical treatment received between January and April 1992. Campbell reached a tentative settlement agreement with Dr. Halcomb and Spohn Hospital, whereby she was to receive $25,000.00 from Dr. Halcomb, and $7,500.00 from the hospital. Before the suit was dismissed, however, Houston General filed a plea in intervention with the court on July 14, 1995, claiming it was legally subrogated to Campbell's claims against Dr. Halcomb and the hospital because it had paid for all of her medical expenses. Specifically, Houston General claimed it had paid and continued to pay workers' compensation benefits to Campbell in the amount of $163,239.73. In the alternative, it claimed an equitable right of subrogation based on benefits received by Campbell.

On July 25, 1995, Campbell moved for summary judgment against Houston General on the subrogation claim. Her contention was essentially that Houston General was only entitled to subrogation as to amounts paid on behalf of the injury suffered at work, and because the injury for which she sued the defendants did not occur at work, it was a separate incident which fell outside the scope of the workers' compensation act. Campbell also asserted a counterclaim against Houston General for violating its

duty of good faith and fair dealing owed to her. Houston General responded by filing its own motion for summary judgment on its subrogation claim, claiming it was entitled to the settlement monies as a matter of law. Meanwhile, Dr. Halcomb and Spohn Hospital were non-suited, and the settlement monies were placed into the registry of the court, pending resolution of the dispute between Campbell and Houston General.

The issue presented to the trial court, and now this Court, is whether, as a matter of law, a workers' compensation carrier has any subrogation interest in settlement proceeds received by an employee when those proceeds result solely from medical malpractice in the course of treatment for a compensable injury. Campbell argued to the trial court that the carrier had none, Houston General argued that it did. The trial court ruled that no valid lien existed with respect to settlement proceeds which derived from medical malpractice during the course of treatment for an otherwise compensable injury, and entered judgment in favor of Campbell.

In its judgment, the court wrote:

1. Based upon the arguments, authorities and Stipulated Facts, the court finds that the on the job injury, upon which compensation payments were based, occurred in 1988, and;

2. The claimed occurrences of malpractice as to the previous Defendants ... occurred in 1992, resulted in settlements of the total funds of $32,500.00 which were interpled into the registry of the Court, and;

3. Based upon the applicable workers' compensation law in the Stipulation of Agreed facts, Houston General Insurance Company has no subrogation or lien as to the interpled funds, and thus, in the alternative, if upon appeal, a subrogation interest is found, then;

4. Plaintiff's counsel, William J. Tinning, is entitled to 1/3 attorney's fees on the interpled funds for his sole, active participation in establishing a recovery in this case. The Motion for Apportionment of Attorney's Fees pled in the alternative to

Plaintiff's Motion for Summary Judgment is hereby GRANTED.

By two points of error, Houston General challenges the trial court's judgment. In point one, it contends that Campbell failed to establish that she was entitled to summary judgment as a matter of law. By its second point, Houston General contends the court abused its discretion by awarding Campbell's attorney one-third of the total interpleaded funds.

## Standard of Review

A summary judgment movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). In deciding whether or not there is a disputed issue of material fact which precludes summary judgment, evidence favorable to the non-movant is taken as true, and all reasonable inference and doubts will be resolved in the non-movant's favor. *Id.* The non-movant is not required to present evidence unless the movant has established a right to summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979).

■ A workers' compensation carrier's right of subrogation is purely statutory; there is no common law equitable or contractual right for a workers' compensation carrier to recover against a third-party tortfeasor. *Johnson v. Second Injury Fund*, 688 S.W.2d 107, 108 (Tex.1985); *Finch v. Texas Employers' Ins. Ass'n*, 535 S.W.2d 201, 203 (Tex.Civ. App.—Texarkana 1976, writ ref'd n.r.e.). At issue is the construction of a section in the workers' compensation act governing the subrogation of workers' compensation carriers. Because Campbell's work-related injury occurred in February 1988, whatever statutory right to subrogation Houston General has derives from the former TEX.REV.CIV. STAT. ANN. art. 8307 § 6a,[1] which read as follows:

Where the injury for which compensation is payable under this law was caused under

---

1. Act of May 15, 1973, 63rd Leg., R.S., ch. 88, § 10, 1973 Tex. Gen. Laws 193, *repealed by* Act of Dec. 13,1989, 71st Leg., 2nd C.S., ch. 1,

§ 16.01(1), 1989 Tex. Gen. Laws 114 [current version at TEX. LAB.CODE ANN. 417.001 (Vernon 1996)].

circumstances creating a legal liability in some person other than the subscriber to pay damages in respect thereto, the employee may proceed either at law against that person to recover damages or against the association for compensation under this law. . . .

If compensation be claimed under this law by the injured employee . . . then the association shall be subrogated to the rights of the injured employee, and may enforce in the name of the injured employee . . . the liability of said other person, and in case the recovery is for a sum greater than that paid or assumed by the association to the employee or his legal beneficiaries, then out of the sum so recovered the association shall reimburse itself and pay said costs and the excess so recovered shall be paid to the injured employee or his beneficiaries. . . .

TEX. CIV. STAT. ANN. art. 8307, § 6a (Vernon Pamph.1998). In this case, the employee recovered monies from the third party, but the monies recovered ($32,500) did not nearly approach the total cost paid by Houston General for Campbell's medical treatment ($123,-981.97) and other indemnity benefits ($39,-257.76).

■ Under the statute, the workers' compensation carrier is entitled to the right to reimbursement from the first monies paid to an injured employee or his representatives by a third-party tortfeasor, up to the amount of compensation paid, and can recover the amount from the employee or the third-party tortfeasor. *Watson v. Glens Falls Ins. Co.,* 505 S.W.2d 793, 795 (Tex.1974); *Capitol Aggregates, Inc. v. Great Am. Ins. Co.,* 408 S.W.2d 922, 923 (Tex.1966); *U.S. Fire Ins. Co. v. Hernandez,* 918 S.W.2d 576, 578 (Tex. App.—Corpus Christi 1996, writ denied). However, there is but one cause of action against the third party tortfeasor; that of the employee, who owns it burdened by the right of the insurance carrier to recoup itself for compensation paid. *Phennel v. Roach,* 789 S.W.2d 612, 615 (Tex.App.—Dallas 1990, writ denied).

■ When an employee who has been receiving workers' compensation benefits is paid a settlement by a third-party tortfeasor, both the tortfeasor and the employee are jointly and severally liable to the compensation carrier for its entire subrogation claim. *Watson,* 505 S.W.2d at 795; *Performance Ins. Co. v. Frans,* 902 S.W.2d 582, 585 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *Home Indem. Co. v. Pate,* 866 S.W.2d 277, 281 (Tex.App.—Houston [1st Dist.] 1993, writ withdrawn). If a third-party tortfeasor and its insurer wrongfully pay out to the employee money that belongs to the compensation carrier, the third-party tortfeasor and its insurance company are liable for the total amount paid by the carrier. *Pate,* 814 S.W.2d at 498–99.

At issue in this case is whether Spohn Hospital and its doctors may be considered "third parties" with respect to Houston General's claims; we must decide whether that "third-party tort-feasor" may be someone who aggravates an injury sustained at work, which results in additional costs by the compensation carrier. In other words, can a carrier which pays for the treatment of injuries caused by medical malpractice enforce a subrogable right to the recovery obtained by the employee against the provider of the treatment? The trial court effectively concluded that Houston General did not have an interest in the insured's recovery for injuries sustained subsequent to the work-related injury.

■ Had Campbell sued a third party who caused her on the job injury and recovered some amount of damages, the recovery from that third party would clearly be subject to the subrogable interest of the carrier which paid the medical fees stemming from such injury. Campbell contends that this is the only way in which Houston General could have a subrogable interest, and that because the malpractice arose after the compensable workplace injury, there was no viable interest. We disagree.

Houston General's right to subrogation is not altered by the fact the third party from whom Campbell recovered damages injured her after her work-site injuries. All that is required is that the injuries sustained by the employee "result from" a work-related injury. Clearly, had Campbell not been injured

on the job, she would not have sought the medical treatment she received, which in turn aggravated her compensable injuries. At least two Texas courts have held that a physician whose malpractice aggravates a compensable injury is generally a third party subject to suit by a subrogated employer or insurer. *See Allbee v. Day,* 616 S.W.2d 270 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.); *Potter v. Crump,* 555 S.W.2d 206, 209 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e.); *see also* 82 Am. Jur.2d, *Workers' Compensation* § 450.

In *Potter,* the court addressed a claim by a workers' compensation carrier that "the phrase 'injury for which compensation is payable' as found in art. 8307, § 6a is broad enough to include any additional damages ... sustained as a result of [medical treatment] which caused intervener to pay increased compensation benefits." The court determined that it was, and held the trial court had erred in granting summary judgment in favor of a defendant seeking to resist the compensation carrier's intervention in an underlying suit. *Id.* In *Allbee,* the issue was whether the statute of limitations barred a suit by an employee against a doctor whose malpractice exacerbated a compensable injury he had been treating. Before concluding that the employee had waited too long before filing suit, the court noted that,

> [w]e have no quarrel with plaintiff's argument that an action for medical malpractice in treatment of a compensable injury qualifies as a third-party claim under section 6a. [citation omitted]. We also agree that the fact that the malpractice in treatment of the injury did not occur until a date subsequent to the date of the injury does not effect the characterization of the claim against the doctor as a third party claim.

*Allbee,* 616 S.W.2d at 273.

▮▮▮ Although those cases involved the ability of an employee to sue a third party and also receive benefits, and did not involve a carrier's subrogation interest in the amount covered, we believe that an extension of a carrier's interest to the situations addressed in *Potter* and *Allbee* furthers the purpose of the Workers' Compensation Act. The act is a remedial statute and must be liberally construed in favor of the injured employee, with a view toward effectuating its purpose and promoting justice. *Miears v. Indus. Accident Bd.,* 149 Tex. 270, 232 S.W.2d 671, 675 (1950); *Texas Employers' Ins. Ass'n v. Thomas,* 415 S.W.2d 18, 19. (Tex.Civ.App.—Fort Worth 1967, no writ). The purpose of the act is to provide speedy, equitable relief to an employee injured in the course of his employment. *Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 212 (Tex.1988); *Texas Employers' Ins. Ass'n v. Wright,* 128 Tex. 242, 97 S.W.2d 171, 172 (1936). At its most basic, the act is meant to ensure that, when an employee is injured in the course and scope of employment, he or she may reasonably depend that his or her employer, through its workers' compensation carrier, will pay for any medical treatment arising therefrom.

▮▮▮ There are judicially created incentives for carriers to promptly pay for medical treatments arising from work related injuries. Among those is the rule that a workers' compensation carrier has a duty to handle claims in good faith and with fair dealing. *Aranda,* 748 S.W.2d at 212; *Campbell v. Texas Employers' Ins. Ass'n,* 920 S.W.2d 323, 327 (Tex.App.—Houston [1st Dist.] 1995, no writ). In addition to the act's policy of prompt payments and good faith dealing by workers' compensation carriers, Texas courts have held that in order to defeat a workers' compensation claim on the basis that the injury resulted from an unrelated cause (in this case, the conduct of Spohn Hospital *et. al.*), the workers' compensation carrier must show that the unrelated injury is considered the sole cause of the claimant's present incapacity. *See National Farmers Union Prop. & Cas. Co. v. Degollado,* 844 S.W.2d 892, 896 (Tex.App.—Austin 1992, writ denied). There may be more than one producing cause of incapacity. *Id.; St. Paul Fire & Marine Ins. Co. v. Murphree,* 163 Tex. 534, 357 S.W.2d 744, 749 (1962). Conversely, a workers' compensation claimant need not prove that work-related injury is the sole cause of the incapacity. *Degollado,* 844 S.W.2d at 896. Indeed, if Campbell were able to prove that the work-related injury was a producing cause of the injury, Houston General would

be liable for the entire injury. *See id.; Liberty Mut. Ins., Co. v. Peoples,* 595 S.W.2d 135, 140 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.).

At the time Campbell was obtaining medical treatment, Houston General paid for such treatment under the belief that her injuries resulted from an on-the-job injury. The fact that her injuries may have been enhanced or exacerbated by medical malpractice would not, by itself, absolve Houston General from paying for her medical treatment. Indeed, all of Campbell's injuries are ultimately traceable to her on-the-job injury. Pursuant to its obligations under the workers' compensation act, and its presumably good faith belief that Campbell's medical treatment was necessitated by a compensable injury, Houston General paid for treatment in figures far in excess of the settlement between Campbell, Spohn Hospital, and Dr. Halcomb. Were we to conclude that Houston General was barred from asserting a subrogation interest in the settlement proceeds as a matter of law, we would be undermining the intent of the act and cautioning compensation carriers against promptly paying for medical expenses when a possible intervening cause for injuries arises, rather than encouraging them to pay for treatment traceable to work-related injuries with the assurance that they may be recompensed for any monies deriving from a third party suit.

As we have already stated, Campbell's suit against her doctor and the hospital was a third party suit under article 8307 § 6a. Because Houston General paid for not only the initial treatment, but also for the subsequent treatment necessitated by the malpractice, it was entitled to recover its costs from Campbell's settlement. Accordingly, we conclude that the trial court erred in granting Campbell's motion for summary judgment, and also erred in denying Houston General's motion. We hold as a matter of law that Houston General is entitled to reclaim monies paid for Campbell's treatment from her settlement with Spohn Hospital and the doctors.

Having determined that the court erred in not recognizing Houston General's right to subrogation, we address Houston General's second point of error, which maintains that the court abused its discretion by awarding Campbell's attorney one-third of the total interpled funds as his attorney's fees. The trial court ordered that, should Houston General be determined to have a subrogation interest, Campbell's attorney was entitled to one-third attorney's fees "for his sole, active participation in establishing a recovery in the case."

We review the trial court's award of attorney's fees under art. 8307 § 6 under an abuse of discretion standard. *Twin City Fire Ins. Co. v. Jones,* 834 S.W.2d 114, 116 (Tex.App.—Houston [1st Dist.] 1992, writ denied). The award will not be disturbed unless it is shown that the court acted without reference to any guiding rules and principals, and its decision was arbitrary and unreasonable. *Id.* The determination of the merits of each attorney's actions in a case is left to the trial court's discretion. *Hartford Accident & Indemnity Co. v. Buckland,* 882 S.W.2d 440, 446 (Tex.App.—Dallas 1994, writ denied).

Under article 8307 § 6a(a), a compensation carrier is entitled to the "first money" received from a third party tortfeasor. *American Gen. Fire & Cas. Co. v. McDonald,* 796 S.W.2d 201, 204 (Tex.App.—San Antonio 1990, writ denied); *Prewitt & Sampson v. City of Dallas,* 713 S.W.2d 720, 722 (Tex.App.—Dallas 1986, writ ref'd n.r.e.). Costs and attorney's fees shall be paid first and then the carrier shall be reimbursed. *McDonald,* 796 S.W.2d at 204; *Bridges v. Texas A & M Univ. Syst.,* 790 S.W.2d 831, 832 (Tex.App.—Houston [14th Dist.] 1990, no writ). Reimbursement is required only after fees are deducted. *Bridges,* 790 S.W.2d at 832. The purpose of awarding attorney's fees under this article is to pay the plaintiff's attorney (in a third party action) for the benefit accruing to the carrier as a result of the plaintiff's recovery or settlement of its third party case. *Illinois Nat. Ins. Co. v. Perez,* 794 S.W.2d 373, 377 (Tex.App.—Corpus Christi 1990, writ denied). Costs and fees must only be apportioned between the carrier's attorneys and the claimant's attorneys when the carrier's attorney "actively participates" in the third party claim. Tex. Rev.Civ. Stat. Ann. art. 8307 § 6a(a) & (b); *see Hartford Ins. Co. v. Branton & Mendel-*

**698**

*sohn, Inc.,* 670 S.W.2d 699, 702 (Tex.App.— San Antonio 1984, no writ) ( holding that the term "actively participates" means taking "active steps toward prosecuting the [third party] action"). If it does not actively participate, the claimant's attorney is entitled to recover up to one-third of the carrier's subrogation recovery. TEX.REV.CIV. STAT. ANN. art. 8307 § 6a(a).

Campbell's attorney was principally involved in obtaining a settlement vis-a-vis Spohn Hospital and Dr. Halcomb. Indeed, it appears that Campbell had already agreed to settle her claims against Dr. Halcomb and Spohn Hospital before Houston General ever intervened. The affidavits from Houston General's attorneys do not state that they had any part in obtaining a settlement between Campbell and Dr. Halcomb or Spohn Hospital, nor did they directly secure any recovery on Houston General's behalf from the third parties. Rather, Houston General contends it "actively participated" because it intervened for the purpose of asserting its subrogation interest in the settlement monies. It incurred extra costs as a result of its dispute with Campbell regarding rights to the settlement corpus. Those expenses are separate from its expenditures which may be recouped under article 8307 § 6a; namely, the monies paid for Campbell's medical treatment.

The cases relied on by Houston General at the trial court do not discredit the award of attorney's fees to Campbell's attorney. Specifically, in *Aetna Casualty & Surety Co. v. Harjo,* 766 S.W.2d 583, 583–84 (Tex.App.— Beaumont 1989, no writ), the carrier intervened *prior* to the execution of its claimant's settlement with a third party tortfeasor. *Id.* The trial court awarded the claimant's attorneys one third of Aetna's recovery, plus half of the litigation expenses. *Id.* Aetna did not even dispute the award of attorney's fees to the claimant's attorneys, but only complained of the apportionment of costs. *Id.* In the instant case, Houston General apparently played no part in obtaining any recovery by Campbell in the third party action, nor did it secure any payment on its own behalf from the third parties. *Compare Hartford Acc. Indemnity Co. v. Buckland,* 882 S.W.2d 440,

447 (Tex.App.—Dallas 1994, writ denied) (carrier's attorney did not actively participate), *with Brandon v. American Sterilizer Co.,* 880 S.W.2d 488, 494–96 (Tex.App.—Austin 1994, no writ) (carrier's attorney did actively participate in third party recovery).

Because the monies recoupable by an insurance carrier exclude attorney's fees, and because Campbell's attorney was mostly, if not completely, responsible for obtaining a settlement against the underlying defendant, we cannot say that the trial court's award of one third of the settlement to Campbell's attorney was an abuse of discretion. Point of error two is overruled.

The judgment of the trial court in favor of Campbell is REVERSED in part, and judgment is instead RENDERED in favor of Houston General with respect to its claim to the monies recovered by Campbell's settlement of her third party claim. The judgment of the trial court is affirmed, however, with respect to its appropriation of one-third of the settlement monies to Campbell's attorney as his fee.