**HARTFORD INSURANCE COMPANY,**
Appellant,

v.

**BRANTON & MENDELSOHN,**
**INC., Appellees.**

No. 04–83–00025–CV.

Court of Appeals of Texas,
San Antonio.

March 14, 1984.

Rehearing Denied April 18, 1984.

Kenneth L. Clark, San Antonio, for appellant.

James L. Branton, Les Mendelsohn, Branton & Mendelsohn, Michael White, Melvin A. Krenek, San Antonio, for appellees.

Before ESQUIVEL, REEVES and DIAL, JJ.

## OPINION

DIAL, Justice.

A worker's compensation insurer appeals from an order under TEX.REV.CIV.STAT. ANN. art. 8307, § 6a (Vernon Supp.1982–1983) that it pay $24,000.00 in attorney's fees to a worker's attorneys. The attorneys, in settling the worker's suit against a third party, recovered for the subrogated insurer $83,593.33, the total amount of compensation it had paid the worker.

Appellant in twenty points of error deals with two general issues. First, appellant contends the evidence is legally and factually insufficient to support findings its own attorney was not hired to and did not in fact "actively represent" it in the worker's suit against the third party. Second, appellant questions the legal and factual sufficiency of the evidence to support the award of $24,000.00 to the worker's attorneys. Appellant argues that the court awarded fees predicated solely upon a contingent fee basis and that such a basis is not reasonable under article 8307, § 6a. We affirm.

This case involves construction of that portion of article 8307, section 6a, amended effective September 1, 1973, to contain the following provisions:

... when the claimant is represented by an attorney, and the association's interest is not actively represented by an attorney, the association shall pay such fee to the claimant's attorney not to exceed one-third (⅓) of said subrogation recovery or as may have beén agreed upon between the claimant's attorney and the association or in the absence of such agreement the court shall allow a reasonable attorney's fee to the claimant's attorney for recovery of the association's interest which in no case shall exceed thirty-three and one-third per cent (33⅓%) payable out of the association's part of the recovery.

\* \* \* \* \* \*

If the association obtains an attorney to actively represent its interest and if the attorney actively participates in obtaining a recovery, the court shall award and apportion an attorney's fee allowable out of the association's subrogation recovery between such attorneys taking into account the benefit accruing to the association as a result of each attorney's service, the aggregate of such fees not to exceed thirty-three and one-third per cent (33⅓%) of the subrogated interest.

■■■ This amendment, in part, sought to deal with insurer-intervenor practices typical in workers' personal injury suits against third parties.[1] Under the Workers' Compensation Act, an insurance carrier is reimbursed for benefits it paid the worker out of any recovery the worker secures in his suit against third parties. As observed by the appellate court in *Insurance Co. of North America v. Stuebing,* 594 S.W.2d 565, 567 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.):

Somewhat common in such cases, particularly when the carrier deemed the employee's attorney wholly competent to proceed, had been the carrier's employment of its own attorney to intervene in the third party suit and then do little

more than merely stand ready to see that if the employee recovered anything the carrier should have reimbursement and recoupment out of the amount recovered. (The employee's entitlement could only be the excess above that to belong to the carrier.)

One result was that often the carrier obtained a "free ride" insofar as the employee's expense of preparation for and trial of the suit was concerned. The employee's attorney often failed to be fairly compensated for actual work performed for in most cases his work was on a contingent fee basis and there was no provision of law which required the carrier to pay him anything. Often the carrier would pay nothing where it had employed its own attorney to present its claim. It was to supply remedy to protect the attorneys who actually did the work that the amendment was adopted.

Article 8307, section 6a can apply to three situations:

1) where the insurer has an attorney but he does not *actively* represent it;

2) where the worker's attorney represents both the worker and the insurer;

3) where the insurer has an attorney who *actively* represents it and participates in obtaining a recovery.

*International Insurance Co. v. Burnett & Ahders, Associated,* 601 S.W.2d 199, 201 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.)

In points of error six through twenty, appellant argues this case falls into the third category. However, the trial court's findings place this case squarely within the first category. Viewing the record as a whole, we find the overwhelming weight of the evidence supports the trial court's conclusion that appellant was not *actively* represented by its attorney.

The trial court found appellant did not retain its attorney, Mike White, to participate in pre-trial discovery or otherwise to

**1.** Under the earlier version of 8307 § 6a, courts permitted the insurer hiring its own attorney in a third party suit, to recover attorney's fees in addition to reimbursement for benefits paid the employee. Thus, attorney's fees for the insurer came out of the employee's part of the recovery against the third party. *Smith v. Henger,* 148 Tex. 456, 226 S.W.2d 425, 434–35 (1950).

prepare actively for trial. White was hired for $60.00 per hour and worked 6.8 hours in contrast to a year and a half span of preparation by appellee.[2]

James Branton, a member of the appellee law firm, was hired on July 6, 1981, and filed the worker's suit July 20, 1981. The case was set for trial October 4, 1982. Branton and other members of the firm interviewed 61 witnesses, 30 of whom they prepared for trial. Branton spent fifty to seventy-five hours just getting ready for conferences with five doctors and around twenty hours for conferences with the medical illustrator. Lengthy depositions were taken, both medical and non-medical, some of which were video-taped. Under-cover investigation of the defendant's drinking habits extended over a year and a half. Appellee conducted substantial legal research on novel questions of law, including $1,000.00 worth of computer-assisted research. Appellee filed pleadings of various types throughout the time before trial. Branton had ready his motion in limine, voir dire, opening statement, the order of presentation for the 30 witnesses, and the court's charge and special issues. Settlement negotiations began right before trial and involved the major part of five days, including one day of conferences lasting 7 hours during which appellee and accountants arranged a structured settlement.

On the other hand, appellant's attorney, White, simply filed an intervention petition, amending it twice to take into account additional benefits paid the worker. White filed the original intervention pleadings March 31, 1982, claiming $33,693.50; an amendment May 20, 1982, asking $73,-398.80; and a second amendment October 14, 1982, increasing the amount to $83,-593.33. The second amendment came after the settlement. Appellee arranged in the settlement for appellant's reimbursement based on the May 20th amount. Thus, appellee absorbed the October 14th increase of $10,000.00.

Appellant explains White's limited involvement in the case by charging that appellee failed to notify White of case developments. White had asked in a May 20th letter to be sent copies of pleadings filed in the case. In an October 14th letter, received by appellee after the settlement, White asked appellee to let him know how soon the case would be called for trial. White wrote, "I would like to attend the trial." Branton said White was not put on his firm's mailing list. Few pleadings were filed after appellant intervened. White received copies of some but not of others. Branton testified White never called or wrote saying he wanted to participate. Nor did White ask the jury assignment clerk to notify him when the case was called for trial.

■ We read article 8307, section 6a's terms "actively represent" and "actively participate in obtaining a recovery" to mean the attorney takes steps, adequate when measured by the difficulty of the case, toward prosecuting a claim. Merely filing pleadings asserting a claim usually does little to induce a settlement or to win at trial. In fact, if a plaintiff's attorney did nothing more, his inaction could well merit dismissal for want of prosecution. Appellant recommends two cases for consideration in defining "active representation": *International Insurance Co. v. Burnett & Ahders, Associated, supra* at 201–202, and *Lee v. Westchester Fire Insurance Co.,* 534 S.W.2d 392, 395–96 (Tex.Civ.App.—Amarillo 1976, no writ). We call appellant's attention to factors indicating active participation in those cases which are not present here. In *International Insurance*, the intervenor's attorney sought a stipulation as to the amount of subrogation and negotiated a settlement with the third party defendant which resulted in a payment to the intervenor. In *Lee*, the intervenor's attorney, among other actions, exchanged settlement communications with the defendant's attorney and participated

---

**2.** The trial court awarded White $1,000.00 to cover his 6.8 hours of work plus the time spent at the hearings on attorney's fees.

in the culmination of the settlement to the extent that the insurer's full subrogation interest was protected and secured.

■ When appellant complains of lack of notice of several steps appellee took, we point out that White had notice of the key action, *i.e.*, a suit had been filed and was being developed by appellee. If appellant and its attorney intended active participation, it behooved them actively to seek ways to participate. Wanting merely to see papers exchanged by others and to attend a trial indicates the passivity of an observer rather than the activity of an advocate. Evidence fully supports the trial court findings that appellant was not actively represented by its attorney. Points of error 6 through 20 are overruled.

■ This case, thus, falls within article 8307, section 6a's provision where the insurer "is not actively represented by an attorney." In this situation, the insurer shall pay the worker's attorney a fee not to exceed one-third of the insurer's subrogation recovery. In points of error one through five, appellant in substance contends that in an article 8307, section 6a determination of what an insurer owes the worker's attorney, the attorney must offer evidence of the number of hours and a

reasonable hourly rate in order to support an award of fees. Appellant cites *Insurance Co. of North America v. Stuebing, supra* at 568. The *Stuebing* court remanded its case for a redetermination of attorney's fees under article 8307, section 6a, because, although evidence proved the time expended in rendering necessary services, no evidence showed the value of that time.[3] In addition, appellant argues that an article 8307, section 6a fee predicated solely upon a contingent fee basis is not reasonable as a matter of law. We disagree. Our reading of the statute is that it neither requires nor encourages an hour-rate formula for fees.

■ If an insurer wishes to avoid court determination of fees under article 8307, section 6a, the insurer may contract with the worker's attorney on a fee arrangement.[4] However, in the absence of a contract, other portions of article 8307, section 6a make the fee contingent on a recovery by the insurer. The statute imposes a one-third (⅓) recovery limit on the fee owed by the insurer and leaves determination of the amount up to that limit to the court's discretion.

Article 8307, section 6a fees are, nonetheless, truly contingent in nature. First, fees

---

3. As the court notes in *Stuebing, supra* at 567, employees' attorneys in personal injury suits usually work for their clients on contingency fee basis. Here, Branton testified at trial that since his firm generally does personal injury cases on contingency, no real effort is made to keep time slips. No tally or log of time was kept in this particular case. Branton could estimate hours spent on certain phases of trial preparation. But in other areas, he said an hour estimate "would be just a wild guess." An experienced trial attorney testifying for appellee said he did not know of any contingent fee lawyers who kept hour or time records because the point in a contingency fee framework was the recovery, not the time.

At the hearing, appellant's attorney acknowledged the value of appellee's usual work: "We think your firm did an excellent job, as it always does, in the preparation of this lawsuit as you do all of your lawsuits." In addition, looking at the hours and fees of the defendant's attorney in the suit gives an insight into what hours and rates might have been for appellee. The defendant's attorney did not work on contingency. He testified his total time, both staff

and attorney hours, added up to 298 or 299 hours, for which he was paid a total of $17,000.00 or $18,000.00.

Appellant also suggests appellee be made to segregate by value or time the amount of work directed toward appellant's subrogation interest from that directed toward the worker's interest. Evidence indicates no appreciable amount of such work could be so separated. Perhaps the accountant's work on the structured settlement did not in any way benefit appellant. In the main, however, the same efforts by appellee yielded the one recovery which benefitted both the worker and the insurer. Since we find the statute requires fees based not on the amount of attorney work but rather on the benefit to the insurer, segregating time is irrelevant.

4. Branton testified he had contracted to represent insurers on subrogation claims on a contingency fee basis, with one-third (⅓) of recovery being the highest rate and one-fourth (¼) being the lowest. Any rate lower than one-third (⅓) involved the insurer also sharing Branton's expenses.

are contingent on some recovery by the insurer. Second, the statute phrases the upper limit of the fee in terms of a fraction or percentage of the subrogation recovery or interest. Appellant infers legislative intent that courts determine fees within the one-third ($\frac{1}{3}$) limit on an hour-times-rate basis. However, injecting an hour-rate basis disturbs the statute's contingent fee design. The statute does not provide for fees in the absence of a recovery, no matter how many hours the worker's attorneys labor nor how high their usual and "reasonable" hourly rate. Nor does the statute fully compensate the attorney whose hour-times-rate fees outstrip the one-third ($\frac{1}{3}$) limit. In the latter case, the insurer receives a "free ride" to the extent hour-rate fees would exceed the one-third ($\frac{1}{3}$) recovery fees payable under article 8307, section 6a. The statute does not look to an hour-rate basis in these two situations. Hence, to impose an hour-rate basis on fees recoverable up to one-third ($\frac{1}{3}$) seems inconsistent. The insurer would invariably benefit, always paying on the basis yielding the lower fee, either the hour-rate basis or the one-third ($\frac{1}{3}$) recovery basis. But the worker's attorney would only sometimes be fully compensated.

 But to say article 8307, section 6a's language and design does not provide for an hour-rate fee determination is not to say the statute leaves the court without guidance in fee determination within the one-third ($\frac{1}{3}$) recovery limit. The main emphasis of the statute is upon the benefit to the insurer. The statute phrases the upper limit of the fee in terms of a third of the subrogation recovery. In addition, the part of the statute dealing with the "active" insurer's attorney, directs that the court allocate fees between the worker's attorney and the insurer's attorney by "taking into account the benefit accruing to the association as a result of each attorney's service...." Similarly, a court dealing with a worker's attorney and an inactive insurance company attorney should take into account the benefit to the insurer.

Here, the trial court had factually sufficient evidence to find that appellee prosecuted the case all the way from first pleading to a successful settlement and was thereby the sole cause of a full recovery for appellant. "[A]llowance of attorney's fees rests in the sound discretion of the trial court, and its judgment will not be reversed without a clear showing that the trial court abused its discretion." *Espinoza v. Victoria Bank & Trust Co.*, 572 S.W.2d 816, 828 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). In light of the complete recovery of the subrogated claim appellee achieved in behalf of appellant, we cannot say the trial court's award of 28.7% of appellant's recovery was an abuse of discretion. Points of error one through five are overruled.

The judgment of the trial court is affirmed.