*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





## OPINION

No. 04-10-00704-CV

Bairon Israel **MORALES**,
Appellant

v.

**MICHELIN NORTH AMERICA, INC.**,
Appellee

From the 229th Judicial District Court, Jim Hogg County, Texas
Trial Court No. CC-07-59
Honorable Alex William Gabert, Judge Presiding

Opinion by:   Rebecca Simmons, Justice

Sitting:      Catherine Stone, Chief Justice
              Sandee Bryan Marion, Justice
              Rebecca Simmons, Justice

Delivered and Filed:  August 3, 2011

AFFIRMED AS MODIFIED

Bairon Israel Morales appeals an agreed final judgment that dismissed with prejudice all of Morales's and intervenor Texas Mutual Insurance Company's claims against defendants Michelin North America and Discount Tire Company of Texas. We modify the trial court's judgment and reduce the defendant's payment of $118,486.21 from the settlement proceeds to Texas Mutual in satisfaction of its Workers' Compensation lien by $27,754.17, which is Texas

Mutual's proportionate share of expenses, for a modified payment amount of $90,732.04, and affirm the judgment as modified.

## BACKGROUND

Bairon Morales and Rodolfo Regalado worked for K&K Repair Service, LLC. On September 12, 2005, Regalado was driving a company truck, with Morales as a passenger, when a rear tire blew out, the vehicle rolled over, and Morales was injured. Texas Mutual Insurance Company, K&K's workers' compensation insurance carrier, paid Morales $177,729.31 in medical and income benefits. Morales sued the tire manufacturer, Michelin North America, Inc.; the tire seller, Discount Tire Company of Texas; his employer, K&K; and the driver, Regalado. Texas Mutual intervened and asserted its subrogation rights. Morales nonsuited K&K and Regalado; Michelin designated them as responsible third parties.

In September 2009, Morales settled with the remaining defendants, Michelin and Discount Tire, for $375,000.00 under an agreement in which Michelin and Discount Tire disclaimed any liability for the accident and alleged that K&K was solely responsible. Texas Mutual did not participate in the negotiations.

After Morales offered Texas Mutual $15,000.00 as payment in full of its subrogation lien, Texas Mutual moved for summary judgment to recover the $177,729.31 it paid Morales, less the statutory maximum of one-third for Morales's attorney's fees. The trial court granted the motion by (1) declaring that "Texas Mutual is entitled to first dollar reimbursement on its subrogation lien," (2) limiting Morales's attorney's fees to "one-third of Texas Mutual's recovery," and (3) effectively denying Morales a proportionate share of expenses and a reduction in Texas Mutual's recovery based on K&K's percentage of responsibility. Later, the court signed an agreed final judgment that dismissed with prejudice Morales's and Texas Mutual's claims against Michelin

and ordered Morales to pay Texas Mutual $118,486.21—the subrogation lien amount less one-third for Morales's attorney's fees. Morales appeals the agreed final judgment solely on the issues of Texas Mutual's proportionate share of expenses and the employer's percentage of responsibility.

### STANDARD OF REVIEW

"We review the trial court's decision to grant summary judgment de novo. . . . Statutory construction is a question of law, which we [also] review de novo." *Tex. Mun. Power Agency v. Pub. Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007); *see City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000).

### PROPORTIONATE SHARE OF EXPENSES

In his first issue, Morales asserts that Texas Labor Code section 417.003(a) requires the trial court to award not only his attorney a reasonable fee but also a proportionate share of the litigation expenses. Texas Mutual agreed to pay Morales's attorney the statutory maximum attorney's fee, but denies that it owes Morales's attorney a proportionate share of expenses because section 417.003(c), not (a), applies and subsection (c) does not require the court to apportion litigation expenses.

### A. Applicable Statute

Chapter 417 of the Texas Labor Code addresses third-party liability. Section 417.003 controls the award and apportionment of attorneys' fees for representation of an insurance carrier's interest in a claim against a third-party. It states:

> (a)    An insurance carrier whose interest is not actively represented by an attorney in a third-party action shall pay a fee to an attorney representing the claimant in the amount agreed on between the attorney and the insurance carrier. In the absence of an agreement, the court shall award to the attorney payable out of the insurance carrier's recovery:

(1) a reasonable fee for recovery of the insurance carrier's interest that may not exceed one-third of the insurance carrier's recovery; and

(2) a proportionate share of expenses.

. . . .

(c)     If an attorney actively representing the insurance carrier's interest actively participates in obtaining a recovery, the court shall award and apportion between the claimant's and the insurance carrier's attorneys a fee payable out of the insurance carrier's subrogation recovery. In apportioning the award, the court shall consider the benefit accruing to the insurance carrier as a result of each attorney's service. The total attorney's fees may not exceed one-third of the insurance carrier's recovery.

TEX. LAB. CODE ANN. § 417.003 (West 2006).

## B.  Active Representation in a Third-Party Action

### 1.  Active Representation

Subsection (a) applies to "[a]n insurance carrier whose interest is not actively represented by an attorney in a third-party action." TEX. LAB. CODE ANN. § 417.003(a) (West 2006); *see Hartford Accident & Indem. Co. v. Buckland*, 882 S.W.2d 440, 446–47 (Tex. App.—Dallas 1994, writ denied) (applying an earlier version of the statute). More specifically, subsection (a)'s applicability depends on what constitutes active representation in a third-party action. "Active representation requires more than filing pleadings asserting the carrier's subrogation interest." *Hodges v. Mack Trucks Inc.*, 474 F.3d 188, 204 (5th Cir. 2006) (citing *Hartford Ins. Co. v. Branton & Mendelsohn, Inc.*, 670 S.W.2d 699, 702 (Tex. App.—San Antonio 1984, no writ)). A carrier's attorney actively represents its client when the attorney takes steps to participate in pre-trial discovery and actively prepare for trial against the third-party defendant. *See Rowan v. Zurich Am. Ins. Co.*, 499 F. Supp. 2d 704, 707 (E.D. Tex. 2007); *Hartford Ins. Co.*, 670 S.W.2d at 701–02; *cf. Buckland*, 882 S.W.2d at 447 ("An attorney 'actively represents' and 'actively participates in obtaining a recovery' when the attorney takes steps, adequate when measured by the difficulty of the case, toward prosecuting the claim [against the third-party defendant]."

(quoting *Branton*, 670 S.W.2d at 702)); *City of Austin v. Janowski*, 825 S.W.2d 786, 789 (Tex. App.—Austin 1992, no writ). Such steps may include serving discovery requests, preparing and delivering discovery products, deposing witnesses, hiring experts, participating in hearings, preparing the charge, negotiating a settlement, and the like. *See Buckland*, 882 S.W.2d at 447 (noting the carrier "did not generate or send any written discovery or take any depositions" and "did not participate in the hearings"); *Janowski*, 825 S.W.2d at 789; *Branton*, 670 S.W.2d at 702.

Intervention alone does not establish active representation as a matter of law. *See Janowski*, 825 S.W.2d at 789–90 (agreeing that the employer was not actively represented even though it filed a petition in intervention and attended a deposition); *Branton*, 670 S.W.2d at 702 (approving the trial court's determination that the carrier was not actively represented although its attorney had filed an original and two amended petitions in intervention); *Univ. of Tex. Sys. v. Melchor*, 696 S.W.2d 406, 409 (Tex. App.—Houston [14th Dist.] 1985, no writ) ("Under the circumstances of contested liability, the subrogation attorney does not fulfill his duty of actively participating by simply filing the necessary papers for intervention and reviewing pleadings.").

2. *Apportioning Attorney's Fee, Expenses*

In cases where subsection (c) applies, the court takes a maximum of one-third of the carrier's recovery and apportions and awards it as attorneys' fees according to "the benefit accruing to the insurance carrier as a result of each attorney's service." TEX. LAB. CODE ANN. § 417.003(c) (West 2006); *see Buckland*, 882 S.W.2d at 447. Subsection (c) does not address apportioning expenses.[1] However, if subsection (a) applies and the claimant's attorney and the carrier do not agree on the claimant's attorney's fee, the court has a mandatory duty to award to

---

[1] *See Caesar v. Bohacek*, 176 S.W.3d 282, 285 n.3 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("[S]ubsection (c) does not provide for a claimant to recover litigation expenses from an insurance carrier."). The legislature may have assumed that if the carrier was "actively participat[ing] in obtaining a recovery," the carrier and claimant would each bear their own expenses.

the claimant's attorney both a reasonable attorney's fee and "a proportionate share of expenses." TEX. LAB. CODE ANN. § 417.003(a) (West 2006); *accord Buckland*, 882 S.W.2d at 447.

## C.  Texas Mutual's Representation

Morales asserts that because Texas Mutual was not actively represented in his third-party action, subsection (a) applies, and his attorney should get a reasonable fee **and** a proportionate share of litigation expenses.  In response, Texas Mutual asserts that subsection (c) should apply because Morales resisted paying first money as he was required to do.  The record shows that Texas Mutual filed an original and two amended petitions in intervention, but does not show that Texas Mutual served any written discovery requests, conducted any depositions, hired any experts, participated in the mediated settlement negotiations,[2] or shared in the expenses of Morales's suit against the third-party defendants.  Texas Mutual concedes that intervention alone does not constitute active representation and admits that it "never contended its attorneys participated in obtaining the settlement from the third-party defendants—only that its attorneys actively represented Texas Mutual's interest in obtaining the subrogation recovery."

Subsection (c) controls apportioning attorneys' fees between the carrier and the claimant when both are actively represented and both are actively participating in obtaining a recovery from the third-party defendant.  *See Tex. Dep't of Transp. v. Wilson*, 980 S.W.2d 939, 942 (Tex. App.—Fort Worth 1998, pet. denied).  Subsection (c) does not apply to a contest between the claimant and the carrier.  If a claimant improperly resists paying the carrier its subrogation interest, the carrier may seek to recover its attorney's fees in a declaratory judgment action.  *See Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 443 (Tex. App.—Austin 2004, pet. denied); *Univ. of Tex. Health Science Ctr. at San Antonio v. Mata & Bordini, Inc.*, 2 S.W.3d 312,

---

[2] Texas Mutual asserts that it had less than one day's notice of the mediation.  The record also shows Texas Mutual filed a motion for summary judgment against Morales and a reply to Morales's response to its motion for summary judgment.

319 (Tex. App.—San Antonio 1999, pet. denied). In this case, Texas Mutual sought a declaratory judgment against Morales for its attorney's fees.

However, the relevant activities to determine active representation are the steps Texas Mutual took in its joint action with Morales against the third-party defendants, not the steps in its internecine conflict with Morales. It is undisputed that Texas Mutual intervened, but intervention alone is not, as a matter of law, active representation. *See Hartford Accident & Indem. Co. v. Buckland*, 882 S.W.2d 440, 447 (Tex. App.—Dallas 1994, writ denied); *Hartford Ins. Co. v. Branton & Mendelsohn, Inc.*, 670 S.W.2d 699, 701–02 (Tex. App.—San Antonio 1984, no writ). The only other steps Texas Mutual took were not directed towards the third-party defendants, but were steps to secure payment of its subrogation lien from Morales. Such steps do not satisfy subsection (c)'s requirement for the carrier to "actively participate[] in obtaining a recovery" from the third-party defendant. *See* TEX. LAB. CODE ANN. § 417.003(c) (West 2006).

## D. Proportionate Share of Expenses

In its summary judgment pleadings, Texas Mutual asked the trial court to find that section 417.003(c) applies, but if the court found that section 417.003(a) applies, asked the court to determine its proportionate share of expenses to be $27,754.17. The trial court's May 7, 2010 order granting Texas Mutual's motion for summary judgment found that section 417.003(c) applies and recognized Texas Mutual's subrogation lien in the amount of $177,729.13.[3] In the agreed final judgment, the trial court ordered Morales to pay Texas Mutual $118,486.21 in satisfaction of its subrogation lien. The ordered amount appears to be the entire subrogation lien less one-third for an attorney's fee without any reduction for a proportionate share of expenses.

---

[3] Morales's attorneys claimed $59,051.44 in expenses. Texas Mutual calculated its proportionate share by dividing its subrogation lien of $177,729.31 by Morales's recovery of $375,000.00 and rounding to 47.00%. It calculated its 47% share of expenses as $27,754.17. Assuming section 417.003(a) applies, neither party disputes $27,754.17 as Texas Mutual's proportionate share of expenses.

Because Texas Mutual was not actively represented in the third-party action, the trial court erred in applying section 417.003(c) rather than 417.003(a). *See* TEX. LAB. CODE ANN. § 417.003(c) (West 2006); *Branton*, 670 S.W.2d at 702–03; *see also Caesar v. Bohacek*, 176 S.W.3d 282, 285 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (noting the legislature's intent in enacting section 417.003 was to keep carriers from free-riding on claimant's case). Under section 417.003(a), the court was required to award Morales a proportionate share of expenses. *See* TEX. LAB. CODE ANN. § 417.003(a); *Buckland*, 882 S.W.2d at 447. We sustain Morales's first issue.

## DETERMINATION OF PERCENTAGE OF RESPONSIBILITY

In his second issue, Morales asserts he is entitled to have the fact-finder determine his employer's percentage of responsibility for his injuries so the carrier's recovery may be reduced accordingly.

### A. Background

After Morales was injured, he sued Michelin, Discount Tire, his employer, K&K, and the driver, Regalado. Each defendant answered and Texas Mutual intervened. Michelin moved to designate K&K and Regalado as responsible third parties and noted that Morales had nonsuited them. Subsequently, Morales settled with Michelin and Discount Tire. The settlement agreement dismissed with prejudice all of Morales's and Texas Mutual's claims against Michelin and Discount Tire. After the settlement, Texas Mutual filed a second amended petition in intervention. Texas Mutual sought a declaratory judgment that it was "entitled to first dollar reimbursement of its subrogation claim," arguing that section 417.003(c) applied, and thus its subrogation interest could not be reduced based on K&K's alleged negligence, and sought reimbursement of its attorney's fees. In response, Morales asserted that he is entitled to reduce his reimbursement of Texas Mutual's subrogation interest by a proportionate share of expenses

and by K&K's percentage of responsibility for his injuries. On appeal, Morales asserts that the trial court abused its discretion because it did not allow the "trier of fact" to determine the employer's percentage of responsibility.

## B. Controlling Law

An insurance carrier's subrogation interest may be reduced by an amount "based on the [employer's] percentage of responsibility [as] determined by the trier of fact under Section 33.003, Civil Practice and Remedies Code." *See* TEX. LAB. CODE ANN. § 417.001(b) (West 2006). The fact-finder determines the percentage of responsibility for each claimant, defendant, settling person, and properly designated responsible third-party. *See id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 33.003 (West 2008)). However, Texas courts may not issue advisory opinions. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (construing the Texas constitution's "separation of powers article to prohibit courts from issuing advisory opinions"). "The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties." *Id.*; *see Robinson v. Alief Indep. Sch. Dist.*, 298 S.W.3d 321, 325 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("A case becomes moot when: (1) it appears that a party seeks to obtain a judgment upon some controversy, when in reality none exists; or (2) a party seeks a judgment upon some matter which cannot have any practical legal effect upon a then existing controversy."); *Lavely v. Heafner*, 976 S.W.2d 896, 897 (Tex. App.—Houston [14th Dist.] 1998, no pet.) ("Where a live controversy ceases to exist between the parties, any opinion a court might render would be strictly advisory."). "[A] decision that does not bind the parties is, by definition, an advisory opinion prohibited by Texas law." *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994) (citing *Tex. Ass'n of Bus.*, 852 S.W.2d at 444).

**C. Analysis**

Morales initially sued four defendants. Sometime before October 2007, he nonsuited two defendants, K&K and Regalado. Later, he settled with the two remaining defendants, Michelin and Discount Tire. The parties' mediated settlement agreement states that the parties "desire to compromise and settle all claims and causes of action of any kind whatsoever which the parties have or may have" stemming from the accident in which Morales was injured. The agreement expressly releases Michelin and Discount Tire and dismisses with prejudice Morales's and Texas Mutual's claims against the defendants. Morales does not dispute that he nonsuited K&K and Regalado or that he settled with Michelin and Discount Tire. Further, the record clearly establishes that Morales settled with the two remaining defendants before he obtained a determination of the employer's percentage of responsibility for his injuries.

When the trial court decided Texas Mutual's motion for summary judgment, Morales had already nonsuited or settled with all of the defendants. *See generally* TEX. CIV. PRAC. & REM. CODE ANN. § 154.071 (West 2011) (describing the effect of a written settlement agreement). As the Agreed Final Judgment states, "the matters in controversy between Plaintiff and Defendant had been compromised and settled . . . [and] all releases had been executed between Plaintiff, Defendant, and Intervenor." *See Mem'l Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 435 (Tex. 1997) (authorizing post-injury releases of even gross negligence). Once Morales settled all of his claims with the only remaining defendants, there was no longer a live controversy between Morales and the defendants on the matter of his injuries. *See Robinson*, 298 S.W.3d at 325 (mootness); *Lavely*, 976 S.W.2d at 897 (advisory opinions). The trial court could not have properly rendered a decision on the employer's percentage of responsibility because, without any remaining defendants, its decision would not be binding on the parties. *See Robinson*, 298

S.W.3d at 325; *Lavely*, 976 S.W.2d at 897. Thus, the trial court did not err by effectively denying Morales's request for a determination of his employer's percentage of responsibility. We overrule Morales's second issue.

## CONCLUSION

Because Texas Mutual was not actively represented in Morales's claims against the defendants he alleged were responsible for his injuries, section 417.003(a) is the applicable provision, and the trial court erred when it applied section 417.003(c) and failed to reduce Texas Mutual's first money payment by the amount of its proportionate share of expenses. See TEX. LAB. CODE ANN. § 417.003 (West 2006); *Hartford Ins. Co. v. Branton & Mendelsohn, Inc.*, 670 S.W.2d 699, 701–02 (Tex. App.—San Antonio 1984, no writ). Therefore, we modify the trial court's judgment and reduce the defendant's payment of $118,486.21 of the settlement proceeds to Texas Mutual in satisfaction of its Workers' Compensation lien by $27,754.17, which is Texas Mutual's proportionate share of expenses, for a modified payment amount of $90,732.04. *See* TEX. R. APP. P. 43.2(b). Because Morales nonsuited or settled with all the defendants before he obtained a determination of his employer's percentage of responsibility for his injuries, we deny his prayer to remand this case for such a determination. We affirm the judgment as modified.

Rebecca Simmons, Justice