# NO. 12-23-00292-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *OLD REPUBLIC INSURANCE COMPANY,*<br>*APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | | |
| *DEBRA MORRIS, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF KENNETH W. MORRIS, ASHLEY BIALOWAS F/K/A ASHLEY MORRIS, AMANDA MORRIS WRIGHT, JIMMY WILLIAMS,* | § | *JUDICIAL DISTRICT COURT* |
| *ORLANDO ORDAZ AND ROY MCCOLLOUGH,*<br>*APPELLEES* | § | *ANGELINA COUNTY, TEXAS* |

## *OPINION*

Appellant, Old Republic Insurance Company (ORIC), appeals the trial court's grant of summary judgment in favor of Appellees, Debra Morris, Ashley Bialowas, Amanda Morris Wright, Jimmy Williams, Orlando Ordaz, and Roy McCullough. In two issues, it alleges that the trial court incorrectly applied the "employer responsibility offset" contained in the Texas Labor Code and abused its discretion in awarding attorney's fees to Appellees. We affirm in part, reverse and render in part, and reverse and remand in part.

## BACKGROUND

On April 26, 2014, at a plywood mill operated by Georgia-Pacific Wood Products South, LLC (Georgia-Pacific), located in Corrigan, Texas, a fire and subsequent explosion occurred in the sander dust collection system area. Four Georgia-Pacific employees, Kenneth Morris, Jimmy

Williams, Orlando Ordaz, and Roy McCullough, were injured in the explosion. Kenneth Morris later died from his injuries. Williams, Ordaz, and McCullough each submitted individual workers' compensation claims for their injuries, while Debra Morris, Kenneth Morris's surviving spouse, submitted a claim for Mr. Morris's injuries and death. ORIC, Georgia-Pacific's workers' compensation insurance carrier, provided benefits to each of the claimants.

Multiple entities were involved in the design, manufacture, and installation of the sander dust collection system, including Aircon Corporation (Aircon), Mid-South Engineering Company (Mid-South), Grecon, Inc. (Grecon), and Global Asset Protection Services, LLC (GAPS). Appellees and Mrs. Williams brought third-party personal injury negligence claims against these entities in the United States District Court for the Eastern District of Texas. Appellees settled with Aircon and Mid-South and dismissed them from the case before trial commenced in December 2017.[1] Appellees settled with Grecon before the jury returned its verdict, leaving GAPS as the sole remaining defendant.[2] Subsequently, the jury returned a verdict in Appellees' favor in the total amount of $18,460,279.00, with $13,349,176.00 of that amount awarded to Mr. and Mrs. Williams, $2,500,000.00 to Debra Morris, $2,424,785.00 to the estate of Kenneth Morris, $87,149.00 to McCullough, and $79,169.00 to Ordaz. The jury apportioned responsibility (pursuant to Section 33.003 of the Texas Civil Practice and Remedies Code) for the incident as follows: 65% to Georgia-Pacific, 20% to Aircon, 10% to Mid-South, and 5% to GAPS. The jury did not allocate any fault to the injured employees.

Judge Ron Clark issued an order addressing the application of the recovery and liability limits contained in Sections 33.012 and 33.013 of the Texas Civil Practice and Remedies Code, respectively.[3] Five of the seven appellees—all except Mr. and Mrs. Williams—stipulated that prior settlements exceeded the total damages awarded by the jury, and that a take-nothing judgment should be entered as to their respective claims. As to the Williams parties, Judge Clark ruled that Section 33.013 limited GAPS's liability for their damages to the amount of

---

[1] During the jury trial, ORIC moved to intervene in the case based on its subrogation interest in Appellees' monetary recovery; however, the court denied the motion as untimely.

[2] Appellees additionally reached settlements with Georgia-Pacific and multiple related entities; however, none of the parties released by those settlement agreements were ever made defendants in the federal lawsuit.

[3] Section 33.012 reduces a plaintiff's maximum recovery by his percentage of fault, as determined by the jury, and further reduces the damages amount to be recovered by the sum of the dollar amounts of all settlements. Section 33.013 caps a defendant's monetary liability to the percentage of damages found by the trier of fact equal to that defendant's percentage of responsibility (in this case, the 5% responsibility the jury attributed to GAPS).

$667,458.80, and in the court's Final Judgment, awarded Jimmy Williams $642,458.00 and Rebecca Williams $25,000.00.

In light of the jury's finding that Georgia-Pacific was 65% responsible for Appellees' injuries, Appellees asserted that ORIC's right to recovery was obviated by the "employer responsibility offset" contained in Texas Labor Code Section 417.001(b). Conversely, ORIC maintained that this offset did not apply to the amounts received by Appellees and therefore it was still entitled to reimbursement of benefits paid. On January 22, 2018, Appellees sued ORIC in the 159th District Court of Angelina County, Texas, including claims for intentional torts related to ORIC's lien claim and a request for a declaratory judgment to establish the rights and obligations of the parties as to ORIC's lien claim. ORIC asserted counterclaims against Appellees for breach of contract and conversion related to the outstanding lien. ORIC also filed a plea to the jurisdiction and motion to dismiss as to the intentional tort claims, which the trial court initially denied. However, following this Court's conditional grant of ORIC's petition for mandamus, the trial court granted ORIC's plea to the jurisdiction, dismissed the intentional tort claims, and abated the state court proceedings to permit the Division of Workers Compensation to resolve the "nature and amount of workers compensation benefits [Appellees] received from [ORIC]." The parties ultimately reached an agreement that

> [T]he current amount of Carrier's current medical benefits, for purposes of Chapter 417 of the Texas Labor Code, is $2,958,634.81. This amount is subject to increase pending any medical benefits that may be made in the future. The parties further agree that the amount of current monetary benefits paid by Carrier, for purposes of Chapter 417 of the Texas Labor Code, to Claimant, is $289,037.97. The parties further agree that the amount of current medical benefits paid by Carrier, for purposes of Chapter 417 of the Texas Labor Code, on behalf of Claimant, is $2,958,634.81.

Subsequently, the trial court lifted the abatement as to the declaratory judgment claim. Both ORIC and Appellees filed motions and cross-motions for summary judgment, arguing whether, and to what extent, the federal jury's allocation of responsibility to Georgia-Pacific impacted ORIC's subrogation lien claim. On March 11, 2022, the trial court issued an order granting Appellees' motion for traditional summary judgment as to their declaratory judgment claims, in which it determined that the Section 417.001(b) offset applied to ORIC's subrogation lien. Because the offset amount in this case exceeded ORIC's lien amount, the trial court ruled

that ORIC's lien was wiped out, and that Appellees would receive an additional offset for any future benefits paid.[4]

Thereafter, the state court case was transferred to the 217th District Court of Angelina County, where the court severed abated tort claims.  On October 26, 2023, the trial court granted Appellees' traditional and no-evidence motion for summary judgment as to ORIC's counterclaims for breach of contract and conversion and awarded Appellees attorney's fees related to the declaratory judgment claims.  The trial court denied ORIC's cross-motion for summary judgment as to these issues.  This appeal followed.

## APPLICABILITY OF EMPLOYER RESPONSIBILITY OFFSET

In its first issue, ORIC contends that the reduction of its subrogation interest set forth in Section 417.001(b), based upon the federal jury's finding that Georgia-Pacific was 65% liable for the April 26, 2014, incident, does not apply to the funds received by Appellees as pretrial settlements.

### Standard of Review

In reviewing a declaratory judgment, we refer to the procedure for resolution of the issue at trial to determine the applicable standard of review on appeal.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.010 (West 2023); *Roddy v. Holly Lake Ranch Ass'n, Inc.*, 589 S.W.3d 336, 341 (Tex. App.—Tyler 2019, no pet.); *English v. B.G.P. Int'l, Inc.*, 174 S.W.3d 366, 370 (Tex. App.–Houston [14th Dist.] 2005, no pet.).  Here, because the trial court implicitly resolved the declaratory judgment issues by ruling on motions for summary judgment, we review the propriety of the trial court's grant of the declaratory judgment under the same standards applicable for review of summary judgments.  *See Roddy*, 589 S.W.3d at 341; *Farmers Ins. Exch. v. Rodriguez*, 366 S.W.3d 216, 222 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

On appeal, we review de novo a trial court's summary judgment ruling.  *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered.  *FM*

---

[4] The trial court further issued an order denying ORIC's cross-motion for partial summary judgment on the same issues.

4

*Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).  Therefore, in this case, we must determine whether the trial court properly granted Appellees' declaratory judgment requests and, if not, render the judgment which should have been rendered by the trial court.  *See Roddy*, 589 S.W.3d at 341.  We review the record de novo and in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *See Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006).

To prevail on a traditional Rule 166a(c) summary judgment motion, a movant must prove that there is no genuine issue regarding any material fact and that it is entitled to judgment as a matter of law.  *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004).  Once the movant establishes a right to summary judgment, the burden shifts to the nonmovant to respond to the motion and present to the trial court any issues that would preclude summary judgment.  *See Rollins v. Texas Coll.*, 515 S.W.3d 364, 368–69 (Tex. App.—Tyler 2016, pet. denied) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)).  However, the nonmovant generally need not respond with evidence creating a fact issue if there are deficiencies in the movant's own legal theories that defeat the movant's right to judgment as a matter of law.  *Stovall & Assocs., P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 795 (Tex. App.—Dallas 2013, no pet.).

<u>**Applicable Law**</u>

The Texas Civil Practice and Remedies Code applies to any cause of action "based in tort, in which a defendant, settling person, or responsible third party is found responsible for a percentage of the harm for which relief is sought."  TEX. CIV. PRAC. & REM. CODE ANN. § 33.002(a)(1) (West 2023).  As relevant in this case, following the trier of fact's rendition of a verdict awarding damages to the claimant, the court must (1) reduce the claimant's damages recovery "by the sum of the dollar amounts of all settlements," and (2) limit the claimant's damages recovery from a particular defendant to "the percentage of the damages found by the trier of fact equal to that defendant's percentage of responsibility" for the claimant's injuries.  *Id.* §§ 33.012(b), 33.013(a) (West 2023).  Where only a single defendant remains, these provisions operate independently of one another—Section 33.012(b) provides a maximum amount that the claimant can recover from the total verdict, while Section 33.013(a) provides the maximum amount for which the defendant can be liable, and the claimant will recover the lesser of these two amounts.  *See Roberts v. Williamson*, 111 S.W.3d 113, 123 (Tex. 2003) ("[A]lthough

related, the two sections pose separate inquiries. Section 33.012 controls the claimant's total recovery, while section 33.013 governs the defendant's separate liability.").

The Workers' Compensation Act (contained in the Texas Labor Code) provides that in addition to pursuing a claim for compensation benefits, an employee who suffers a compensable injury may seek damages from liable third parties. When an employee or beneficiary (claimant) claims benefits, "the insurance carrier is subrogated to the rights of the injured employee and may enforce the liability of the third party in the name of the injured employee or the legal beneficiary." TEX. LABOR CODE ANN. § 417.001(b) (West 2023). The carrier is then entitled to reimbursement from the third-party recovery for benefits, including medical benefits, that have been paid for the compensable injury; amounts recovered exceeding the amount already paid as benefits are treated as an advance against future benefits to which the claimant is entitled. *Id.* § 417.002(a), (b) (West 2023). Any recovery greater than the amount of past and future benefits combined then goes to the claimant. *Id.*

Significantly, under Section 417.002, "the compensation carrier gets the first money a worker receives from a tortfeasor." *Texas Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 35 (Tex. 2008). This "first money" reimbursement is "crucial to the worker's compensation system because it reduces costs for carriers (and thus employers, and thus the public) and prevents double recovery by workers." *State Off. of Risk Mgmt. v. Carty*, 436 S.W.3d 298, 303 (Tex. 2014) (quoting *Ledbetter*, 251 S.W.3d at 35). The Texas Supreme Court used strong language in explaining the compulsory nature of first money payment, writing, "There is nothing discretionary about this statute; a carrier's right to reimbursement is mandatory. … [U]ntil a carrier is reimbursed in full, 'the employee or his representatives have no right to any of such funds.'" *Ledbetter*, 251 S.W.3d at 36 (quoting *Capitol Aggregates, Inc. v. Great Am. Ins. Co.*, 408 S.W.2d 922, 923 (Tex. 1966)).

The Workers' Compensation Act also provides that the compensation insurance carrier's subrogation interest is reduced in accordance with the employer's proportionate responsibility. "The insurance carrier's subrogation interest is limited to the amount of the total benefits paid or assumed by the carrier to the employee or the legal beneficiary, less the amount by which the court reduces the judgment based on the percentage of responsibility determined by the trier of fact under Section 33.003, Civil Practice and Remedies Code, attributable to the employer."

6

TEX. LABOR CODE ANN. § 417.001(b).[5]  This limitation on an insurance carrier's subrogation interest is sometimes referred to as the "employer responsibility offset" (ERO).

**Analysis**

ORIC's position on appeal is fairly straightforward—it contends that the reduction of an insurance carrier's subrogation interest set forth in Section 417.001(b) does not apply to amounts received by claimants as pretrial settlements, even when (1) a subsequent jury verdict apportions fault to the carrier's insured (the employer), and (2) the trial court accounts for those pretrial settlements in its judgment as set forth in Section 33.012(b) of the Civil Practice and Remedies Code such that the claimants cannot recover the full amount of the jury's verdict.  Further, under the first money rule, Appellees were required to fully reimburse ORIC's subrogation lien from the settlement proceeds they received (which far exceeded the lien amount) at the time said proceeds were received.  Consequently, as pertaining to any offsets based on Section 417.001(b), ORIC asserts that this Court should reverse the judgment of the trial court and render judgment that ORIC's subrogation lien is valid and enforceable in full.

Appellees assert that when a fact finder apportions responsibility for claimants' injuries per Section 33.003, and finds the employer partially at fault, the ERO should be calculated based upon the entire damages award (regardless of the existence or amount of any pretrial settlements, and regardless of the amount a claimant actually recovers pursuant to the jury's verdict), and should then operate to reduce and potentially eliminate the compensation insurer's subrogation lien.  Thus, Appellees ask this Court to affirm the judgment of the trial court pertaining to the judgment offsets awarded to Appellees for past and future benefits paid by ORIC.

Initially, we recognize that no statutory authority directly addresses the interaction or simultaneous application of Section 417.001(b) of the Labor Code and Section 33.012(b), Civil Practice and Remedies Code. Neither have we located any case law addressing the ERO in a situation involving multiple substantial pretrial settlements as well as a subsequent jury verdict. Therefore, this issue appears to be one of first impression for Texas courts.

*Applicability and Calculation of Employer Responsibility Offset*

As aforementioned, Section 417.001(b) instructs that the insurer's subrogation interest is to be reduced by "the *amount* by which the court reduces the judgment based on the percentage

---

[5] Section 33.003 requires that, as to each cause of action asserted, the trier of fact "shall determine the percentage of responsibility of" each claimant, defendant, settling person, and responsible third party. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003 (West 2023).

of responsibility determined by the trier of fact … attributable to the employer." Our sister court, in considering whether this reduction is calculated "pro rata or by dollar amount," reasoned:

> The statute refers to a reduction in an "amount" based on a "percentage." Further, the word "amount" is used twice in that sentence; in the first instance, "amount" clearly refers to a dollar amount of "total benefits paid." We generally interpret words the same way in a given text, meaning that the most natural reading of "the amount by which the court reduces the judgment" is a dollar amount as well. Had the Legislature intended to limit the carrier's subrogation interest proportionally, it could have written the statute differently. But as written... Section 417.001(b)'s reduction provision applies in dollars and not as a percentage.

*New Hampshire Ins. Co. v. Rodriguez*, 569 S.W.3d 275, 303 (Tex. App.—El Paso 2019, pet. denied); *see also Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 659 (Tex. 1995) ("We must presume that every word of the statute has been used for a purpose and that every word excluded from the statute has been excluded for a purpose."). We find this reasoning persuasive and agree that any reduction in ORIC's subrogation interest (as to each respective claimant) should equal the *actual dollar amount* by which the federal court reduced the judgment *based on* the proportion of responsibility that the federal jury attributed to Georgia-Pacific.

The trial court's order of March 11, 2022, granting Appellees' motion for summary judgment as to their declaratory judgment claim, provides Jimmy Williams, Debra Morris, Roy McCullough, and Orlando Ordaz with a judgment offset to ORIC's lien totaling 65% of the jury's entire damages award to each claimant (for example, the federal jury awarded Jimmy Williams $13,349,176.00 in total damages, and the trial court's order granted him an offset of $8,676,964.40).[6] For each of the aforementioned claimants, this offset completely covered the amount of ORIC's subrogation lien, and required it to pay future benefits until the offset was fully met. Had the claimants received no settlement funds from third parties, but only recovered 35% of the jury's damages award, this method of calculating the ERO may have provided the correct result. However, in considering the particular facts of this case, we do not believe that awarding 65% of each claimant's respective damages as a judgment offset attributes meaning to every word of Section 417.001(b), nor does it comport with the "one satisfaction rule" as

---

[6] Pursuant to Section 33.011(1) of the Texas Civil Practice and Remedies Code, Mr. Morris's estate, Mrs. Morris, and Ashley Biolowas (née Ashley Morris) are considered a single claimant. Similarly, Jimmy Williams and Rebecca Williams are considered a single claimant.

codified in Section 33.012(b). *See Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 113 (Tex. 2018) (one satisfaction rule "is intended to prevent a plaintiff's double recovery based on a single injury"). Instead, we must examine and harmonize Section 417.001(b) of the Labor Code and Section 33.012(b) of the Civil Practice and Remedies Code, giving effect to both, to determine the applicability and the proper method of calculating the ERO in this case. *See Fort Worth Transportation Auth. v. Rodriguez*, 547 S.W.3d 830, 838–39 (Tex. 2018) ("Generally, courts are to construe statutes so as to harmonize them with other relevant laws, if possible.").

The Texas Supreme Court states that the "primary purpose" of Sections 417.001 and 417.002 of the Labor Code is "ensuring carriers are fully reimbursed in order to decrease costs to the carrier (and, in turn, the public)." *Carty*, 436 S.W.3d at 304. First money reimbursement is further "crucial to the workers' compensation system" because it "prevents double recovery by workers." *Ledbetter*, 251 S.W.3d at 35. Appellees' interpretation of the relevant statutes would enable precisely such a double recovery. Under Appellees' interpretation, any workers' compensation claimant could attempt an end-run around the first money rule and Section 417.002(a) by settling with the majority of third-party defendants, trying the case with only one remaining defendant to obtain a verdict and apportionment of responsibility, and then retroactively applying that apportionment to all of the settlement funds received from third parties (upon whom the verdict and fault findings otherwise have no effect). While such an interpretation would produce a favorable outcome for the claimants herein, this is not an outcome that binding authority permits this Court to endorse. Applied in this case, Appellees' reading of the relevant authority permits them to retain (1) all of the workers' compensation benefits paid by ORIC; (2) all of the settlement funds paid by Aircon, Mid-South, Grecon, and the Georgia-Pacific parties; and (3) any amount remaining of the damages awarded in the jury's verdict after applying Sections 33.012(b) and 33.013(a), while ORIC receives no reimbursement at all. The Legislature cannot reasonably be thought to have intended such a result. *See Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018) (courts must make logical inferences when necessary to effect clear legislative intent or avoid an absurd or nonsensical result that the Legislature could not have intended).

We note also that if Appellees settled with GAPS (the final remaining defendant) before the jury returned its verdict, any apportionment of fault by a fact finder would be impermissible as advisory in nature, and the reduction contained in Section 417.001(b) could not be applied to

9

reduce ORIC's subrogation interest. *See, e.g.*, **Morales v. Michelin N. Am., Inc.**, 351 S.W.3d 120, 127 (Tex. App.—San Antonio 2011, no pet.) ("The trial court could not have properly rendered a decision on the employer's percentage of responsibility because, without any remaining defendants, its decision would not be binding on the parties."). And Texas law is clear (and the parties herein do not dispute) that the first money reimbursement framework applies not only to a claimant's recovery via trial and subsequent judgment, but also to settlements received from third parties. *See **Ledbetter**,* 251 S.W.3d at 38 ("When an injured worker settles a case without reimbursing a compensation carrier, everyone involved is liable to the carrier for conversion—the plaintiffs, the plaintiffs' attorney, and the defendants."). That is, had Appellees settled with *all* of the defendants (meaning there would be no apportionment of fault by a trier of fact), they would not be entitled to any offset against ORIC's subrogation lien, but would have to reimburse ORIC from the settlement funds. *See* TEX. LABOR CODE ANN. § 417.002(a). Interpreting the relevant statutes to permit Appellees to avoid reimbursing ORIC any amount because they elected not to settle with one defendant of several is a similarly absurd result.

However, we do not agree with ORIC that there can be no ERO in this situation, because that interpretation would render Section 417.001(b) without effect— a result we must avoid if at all possible. *See **Fort Worth Transportation Auth.**,* 547 S.W.3d at 838–39. We recognize the Legislature's clear intent in enacting Section 417.001(b) that a workers' compensation insurer's subrogation interest should be reduced by some amount when the fault of its insured (that is, the employer), as found by the trier of fact, causes a claimant to receive a lesser portion of a damages verdict than it would have if the employer bore no responsibility for the claimant's injuries. Yoking the amount of the subrogation interest reduction to the dollar amount by which the trial court reduces the judgment award to a claimant *specifically* "based on the percentage of responsibility… attributable to the employer" gives effect to that intent—the compensation insurer is barred from recouping the money that, absent the tortious conduct of its insured, the claimant would have received as damages in the trial court's judgment.

ORIC correctly points out that neither the federal court's final judgment nor the order regarding settlement credits *explicitly* mentions any reduction based upon Section 33.003 as to any of the claimants. However, Appellees are also correct that the amount available for recovery by said claimants was "reduced" (if passively) to just 5% of the verdict because of the *overall*

apportionment of fault, which included a finding of fault on behalf of Georgia-Pacific (the "employer" in this matter). *See* TEX. CIV. PRAC & REM. CODE ANN. § 33.013(a). Because the federal jury apportioned some responsibility to the claimants' employer pursuant to Section 33.003, the trial court correctly determined that the ERO is *generally* applicable in this case. *See, e.g.*, **Rodriguez**, 569 S.W.3d at 299 (finding Section 417.001(b)'s subrogation off-set applies when trier of fact passes on question of employer's liability in a case). However, the *amount* of that offset should be measured by determining the actual impact (measured in dollars) of the jury's apportionment of 65% responsibility for the claimants' injuries to Georgia-Pacific on Appellees' respective monetary recoveries under the federal court's judgment. Further, this determination must take into account the cap on Appellees' recovery supplied in Section 33.012(b).

### The Williams Claimants

The amount Mr. and Mrs. Williams recovered in the federal court's judgment was the result of Section 33.013(a)'s cap on a defendant's maximum liability. Because GAPS was found only 5% at fault for the plaintiffs' injuries, it was only monetarily liable for 5% of the Williams' damages (which equals $667,458.80). No matter how the federal jury apportioned responsibility, because GAPS was the only remaining defendant when the jury returned its verdict, Mr. and Mrs. Williams could only ever have recovered the percentage of their damages equal to the percentage of responsibility apportioned to GAPS. *See* TEX. CIV. PRAC & REM. CODE ANN. § 33.013(a). For example, if the jury determined that GAPS bore zero responsibility, the court could only have entered a take-nothing judgment as to Mr. and Mrs. Williams's claims. Alternately, if the jury chose to allot no responsibility to Georgia-Pacific but maintained the proportions of fault it assigned among Aircon, Mid-South, and GAPS (making GAPS 14.286% responsible), Mr. and Mrs. Williams's recovery would be capped, at least under Section 33.013(a), at $1,907,063.28—a substantial increase over their actual recovery.

However, our inquiry cannot end there, because Section 33.013(a) was not the only constraint on Mr. and Mrs. Williams's monetary recovery under the federal court's judgment. Section 33.012(b) functions alongside Section 33.013(a), and as aforementioned, operated to reduce the jury's damages award to Mr. and Mrs. Williams "by the sum of the dollar amounts of all settlements." Because of that reduction, no matter *how* the jury apportioned responsibility in this matter, Mr. and Mrs. Williams could never have recovered more than $701,426.00, which

represents the amount of the jury's $13,349,176.00 award less the dollar amount of the settlements they received from entities other than GAPS. As ORIC points out, the difference between the amount Mr. and Mrs. Williams actually received and the maximum they *could* have received presuming a jury finding apportioning less or no responsibility to Georgia-Pacific is $33,967.20. This, then, is the greatest possible amount that the jury's apportionment of responsibility to Georgia-Pacific could have cost Mr. and Mrs. Williams, and we conclude that this is the correct amount of the employee responsibility offset by which ORIC's subrogation interest must be reduced as to Mr. and Mrs. Williams. We conclude that the trial court correctly determined that Mr. and Mrs. Williams are entitled to an offset against ORIC's subrogation lien, but erred in determining the amount of that offset.

### *The Morris, McCullough, and Ordaz Claimants*

The jury's apportionment of fault to Georgia-Pacific had no impact on the monetary amounts recovered by Morris, McCullough, and Ordaz (or any of the beneficiaries making claims through them). The federal court's entry of a take-nothing judgment as to each of these Appellees was based solely upon their stipulation that, "because of settlements received," the reduction required by Section 33.012(b) would wipe out any recovery under the verdict. Even if the judgment can be said to have been "reduced" by the court as to these plaintiffs (rather than of their own accord), such reduction was wholly unrelated to the jury's apportionment of responsibility (to Georgia-Pacific or otherwise). We therefore conclude that the ERO does not apply to reduce ORIC's subrogation interest as to benefits paid to Morris, McCullough, and Ordaz. We further conclude that the trial court erred as a matter of law in finding that Morris, McCullough, and Ordaz, respectively, are entitled to any judgment offset against past or future benefits paid to them by ORIC.

We sustain ORIC's first issue in part.

### ATTORNEY'S FEES

In its second issue, ORIC argues that the trial court erred in awarding attorney's fees to Appellees for their declaratory judgment claim.

Attorney's fees are not recoverable unless authorized by statute or contract. ***Tony Gullo Motors I, L.P. v. Chapa***, 212 S.W.3d 299, 310-11 (Tex. 2006). The Texas Civil Practice & Remedies Code provides that in any proceeding under the Texas Uniform Declaratory Judgment

Act, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2023). Prevailing party status is not a prerequisite to an award of attorney's fees in a declaratory judgment action; the court may also award costs to a non-prevailing party if such award would be equitable and just. *Id.*; *see also* **State Farm Lloyds v. C.M.W.**, 53 S.W.3d 877, 894 (Tex. App.—Dallas 2001, pet. denied). The trial court's order herein specifies that the award of attorney's fees is based on Section 37.009 and finds that (1) "Plaintiffs' request for fees is supported by the evidence," and (2) "Plaintiffs' requested fees are reasonable, necessary, equitable, and just." It awards a total of $510,347.00 to Appellees' attorneys, and further conditionally awards appellate attorney's fees. The order does not reflect the trial court's basis for these findings.

"Where the extent to which a party prevailed has changed on appeal, our practice has been to remand the issue of attorney fees to the trial court for reconsideration of what is equitable and just." **Farmers Grp., Inc. v. Geter**, 620 S.W.3d 702, 712 (Tex. 2021) (citing **Morath v. Tex. Taxpayer & Student Fairness Coalition**, 490 S.W.3d 826, 885 (Tex. 2016)). On remand, the degree of success obtained should be the most critical factor in determining reasonableness of a fee award. *Id.* at 713 (internal quotation marks omitted) (citing **Smith v. Patrick W.Y. Tam Tr.**, 296 S.W.3d 545, 548 (Tex. 2009)). We have concluded on appeal that the trial court erred by granting summary judgment in favor of Appellees on their declaratory judgment claim and erred by a wide monetary margin in determining the amount of the offset to which Mr. and Mrs. Williams are entitled. Therefore, the extent to which Appellees prevailed has changed greatly. *See* **Geter**, 620 S.W.3d at 712. Because the record does not reflect the trial court's reasons for its award of fees to Appellees, there is no evidence to indicate whether the trial court's award would remain equitable and just given our opinion in this case, and the trial court should reconsider the award in light of our decision herein. *See* **C.M.W.**, 53 S.W.3d at 894-95.

We sustain ORIC's second issue.

## DISPOSITION

Having sustained ORIC's first issue in part, we *reverse* the trial court's order of March 11, 2022, granting Appellees' motion for summary judgment and *render* judgment granting in part and denying in part Appellees' motion for summary judgment as to their declaratory judgment claim. The statutory offset found in Section 417.001(b) of the Texas Labor Code

13

applies to ORIC's subrogation claims to the amounts awarded to Appellees pursuant to the federal court's final judgment in the underlying case. Pursuant to Section 417.001(b) of the Texas Labor Code, Mr. and Mrs. Williams are entitled to, and are awarded, an offset in the amount of $33,967.20 against ORIC's subrogation claim. Morris, McCollough, and Ordaz are not entitled to an offset in any amount against ORIC's subrogation liens.

Having sustained ORIC's second issue, we *reverse* the trial court's order of October 26, 2023, awarding attorneys' fees to Appellees and *remand* the issue of attorneys' fees to the trial court for reconsideration in light of this opinion. The judgment is *affirmed* in all other respects.

**BRIAN HOYLE**
Justice

Opinion September 30, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Griffith, Retired J., Twelfth Court of Appeals, sitting by assignment.*

(PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**SEPTEMBER 30, 2024**

**NO. 12-23-00292-CV**

**OLD REPUBLIC INSURANCE COMPANY,**
Appellant
V.
**DEBRA MORRIS, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF KENNETH W. MORRIS, ASHLEY BIALOWAS F/K/A ASHLEY MORRIS, AMANDA MORRIS WRIGHT, JIMMY WILLIAMS, ORLANDO ORDAZ AND ROY MCCOLLOUGH,**
Appellees

Appeal from the 217th District Court
of Angelina County, Texas (Tr.Ct.No. CV-00050-18-01)

THIS CAUSE came to be heard on the appellate record, oral argument, and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED, and DECREED that the trial court's order of March 11, 2022, granting Appellees' motion for summary judgment be **reversed**, and judgment **rendered** granting in part and denying in part Appellees' motion for summary judgment in accordance with this Court's opinion. Mr. and Mrs. Williams are entitled to an offset in the amount of $33,967.20 against ORIC's subrogation lien, and Morris, McCullogh, and Ordaz are not entitled to an offset in any amount against ORIC's subrogation lien.

It is further ORDERED, ADJUDGED, and DECREED that the trial court's order of October 26, 2023, awarding attorneys' fees to Appellees be **reversed** and **remanded** for further proceedings consistent with this opinion, and that the judgment be **affirmed** in all other respects.

It is further ORDERED that each party bear their own costs in this cause expended in this court; and that the decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Griffith, Retired J., Twelfth Court of Appeals, sitting by assignment.*